# EXHIBIT A

ORIGINAL

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SAFILO USA, INC., a New Jersey company; and DOES 1-10, Inclusive



FILED
Superior Court Of California
County of Los Angeles

DEC 1 1 2017

Sherri R. Carter, Executive Officer/Clerk

_____ Deputy
Glorietta Robinson

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
VALERIE ALMEIDA, an individual; DIANNE MASCARO, an individual;
SHERRY WASHINGTON, an individual; and TAMI NORRIS, an individual;

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>**BC 686 055** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Ward J. Lott   (Bar # 211307)                     Fax No.: (949) 209-4853
HARDIN & LOTT, APC                                 Phone No.: (949) 337-4810
4340 Von Karman Ave., Suite 380, Newport Beach, CA 92660

| DATE:<br>*(Fecha)* **DEC 1 1 2017** | SHERRI R. CARTER | Clerk, by<br>*(Secretario)* Glorietta Robinson | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

| | **NOTICE TO THE PERSON SERVED:** You are served |
|---|---|
| [SEAL] | 1. [ ] as an individual defendant.<br>2. [ ] as the person sued under the fictitious name of *(specify)*:<br><br>3. [ ] on behalf of *(specify)*:<br><br>under: [ ] CCP 416.10 (corporation)        [ ] CCP 416.60 (minor)<br>     [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)<br>     [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)<br>     [ ] other *(specify)*:<br>4. [ ] by personal delivery on *(date)*: |

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
*LexisNexis® Automated California Judicial Council Forms*



1  James B. Hardin, Bar No. 205071
   jhardin@hardinemploymentlaw.com
2  Ward J. Lott, Bar No. 211307
   wlott@hardinemploymentlaw.com
3  **HARDIN & LOTT, APC**
   4340 Von Karman Ave., Suite 380
4  Newport Beach, CA 92660
   Tel: (949) 337-4810
5  Fax: (949) 209-4853

6  Attorneys for Plaintiffs
   VALERIE ALMEIDA, DIANNE MASCARO,
7  SHERRY WASHINGTON, TAMI NORRIS

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

DEC 11 2017

Sherri R. Carter, Executive Officer/Clerk
By: Glorietta Robinson, Deputy

BY FAX

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **COUNTY OF LOS ANGELES**

10

11  VALERIE ALMEIDA, an individual; DIANNE     Case No.: **BC 686055**
    MASCARO, an individual; SHERRY
12  WASHINGTON, an individual; TAMI NORRIS,    **CLASS ACTION COMPLAINT FOR:**
    an individual,
13
                 Plaintiffs,                   (1)  **WILLFUL MISCLASSIFICATION
14                                                   AS INDEPENDENT
                                                     CONTRACTOR (Labor Code §
15        vs.                                        226.8)**
                                              (2)  **REIMBURSEMENT OF BUSINESS
16  SAFILO USA, INC., a New Jersey company; and      EXPENSES (California Labor Code
    DOES 1-10, Inclusive,                            § 2802)**
17                                            (3)  **UNLAWFUL DEDUCTIONS
                 Defendants.                         FROM WAGES (Labor Code §§
18                                                   221-224, 400-410)**
                                              (4)  **COERCED PURCHASES (Labor
19                                                   Code § 450)**
                                              (5)  **FAILURE TO FURNISH
20                                                   ACCURATE WAGE
                                                     STATEMENTS (Labor Code §§ 226,
21                                                   226.3)**
                                              (6)  **FAILURE TO KEEP ACCURATE
22                                                   PAYROLL RECORDS (Labor Code
                                                     §§ 1174, 1174.5)**
23                                            (7)  **FAILURE TO PAY WAGES
                                                     OWED, WAITING TIME
24                                                   PENALTIES (Labor Code §§ 201-
                                                     209, 227.3, 2751)**
25                                            (8)  **UNLAWFUL COMMISSIONS
                                                     AGREEMENT (Labor Code §§
26                                                   2751, 432.5)**
                                              (9)  **VIOLATION OF CALIFORNIA
27                                                   CHOICE OF LAW AND VENUE
                                                     (Labor Code §§ 925, 432.5)**
28                                            (10) **VIOLATION OF CALIFORNIA'S
                                                     WORKERS' COMPENSATION
                                                     LAWS (Labor Code §§ 3700-3700.5)**

─────────────────────────────────────────────────────
                    CLASS ACTION COMPLAINT

1

2

3

4

5

(11)    **VIOLATION OF UCL (Business and Professions Code §§ 17200, et seq.)**

(12)    **PRIVATE ATTORNEYS GENERAL ACT (Labor Code §§ 2699, et seq.)**

**JURY TRIAL DEMANDED**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Valerie Almeida, Dianne Mascaro, Sherry Washington and Tami Norris (collectively referred to herein as "PLAINTIFFS"), complain and alleges as follow:

## **INTRODUCTION**

1.     Extending back in time for a period exceeding 4 years prior to the filing of this Complaint, Defendant Safilo USA, Inc. ("DEFENDANT SAFILO") has implemented uniform policy to willfully misclassify its California Sales Representatives as "independent contractors" when they are plainly employees under California law.

2.     DEFENDANT SAFILO knows these California Sales Representatives, who are required to work exclusively and full time for DEFENDANT SAFILO pursuant to detailed contractual requirements exclusively controlled by DEFENDANT SAFILO, are employees as a matter of California law.

3.     Despite this knowledge, DEFENDANT SAFILO forces them to execute, as a condition precedent to continued employment, a uniform agreement that makes an illegal declaration that these California Sales Representatives will be treated for all purposes as "independent contractors."  A copy of this unlawful contract is attached hereto as **Exhibit A**, which has been uniformly applied to all California Sales Representatives since at least early 2013.

4.     This uniform practice has consistently deprived PLAINTIFFS, and other California Sales Representatives working for DEFENDANT SAFILO, very important rights of California employees.

5.     According to the State of California, Department of Industrial Relations ("DIR"), when a worker is misclassified as an independent contractor, he or she is not subject to California minimum wage and overtime protection laws.

6.     The DIR further notes that misclassified workers have no workers' compensation coverage if injured on the job, no right to family leave, no unemployment insurance, no legal right to organize or join a union, no protection against employer retaliation, and no right to reimbursement of employment-related expenses.  Protections against discrimination in the workplace are also greatly reduced.

7.     The misclassification of workers as independent contractors creates an unfair playing field for responsible employers who honor their lawful obligations to their employees. The DIR states

that misclassification of workers results in a loss of payroll tax revenue to the State of California, estimated at $7 billion per year, and increased reliance on the public safety net by workers who are denied access to work-based protections.

8.    Accordingly, California has imposed stiff penalties under various statutes, including the Labor Code, for employers who misclassify employees to gain an unfair advantage in the market place. It is unlawful for an employer to: (1) willfully misclassify an individual as an independent contractor, *see* Cal. Lab. Code § 226.8(a)(1); and (2) charge an individual who has been willfully misclassified as an independent contractor a fee, or make any deductions from compensation, for any purpose, including for goods, materials, space rental, services, or the like.  *See* Cal. Lab. Code § 226.8(a)(2).

9.    DEFENDANT SAFILO systematically committed both violations for many years, and further compounded these violations through a pattern of self-dealing and coerced purchases of business expenses deducted from PLAINTIFFS' paychecks in violation of Labor Code §§ 221-224, 400-410, 450, & 2802, among other provisions.  In so misclassifying its employees, DEFENDANT SAFILO has effectively foisted upon each employee tens of thousands of dollars' worth of charges annually that should have been borne by DEFENDANT SAFILO.

10.    Through this uniform practice, DEFENDANT SAFILO subjects its sales representatives to various additional unlawful wage and hour practices, including but not limited to, as stated herein: (1) misclassifying them as independent contractors; (2) failing to pay or reimburse work-related expenses including vehicle costs and mileage; (3) charging inappropriate independent contractor a fees; (4) making improper deductions from compensation; (5) charging improper fees including for goods, materials, space rental, services, government licenses, repairs, equipment maintenance, or fines arising from the individuals employment  (6) failing to maintain adequate records; (7) failing to furnish accurate wage statements; and (8) failing to pay timely wages and expense reimbursements, including upon termination.

## **PLAINTIFFS**

11.    Plaintiff Valerie Almeida ("PLAINTIFF ALMEIDA") is a resident of Ventura County, and is a citizen of the State of California and domiciled in the State of California.  PLAINTIFF ALMEIDA was employed as a sales representative for DEFENDANT SAFILO during all pertinent

timeframes.   At all times during her employment with DEFENDANT SAFILO, PLAINTIFF ALMEIDA was misclassified as an independent contractor.   A significant portion of PLAINTIFF ALMEIDA's employment responsibilities as described in Exhibit A were carried out by PLAINTIFF ALMEIDA in Los Angeles County, California.   PLAINTIFF ALMEIDA resided within Los Angeles County during a portion of the four-year period preceding the filing of this Complaint, and resided within Los Angeles County at the time she executed the contract attached hereto as Exhibit A.

12.      Plaintiff Diane Mascaro ("PLAINTIFF MASCARO") is a resident of Ventura County, and is a citizen of the State of California and domiciled in the State of California.   PLAINTIFF MASCARO was employed as a sales representative for DEFENDANT SAFILO during all pertinent timeframes.   At all times during her employment with DEFENDANT SAFILO, PLAINTIFF MASCARO was misclassified as an independent contractor.   A significant portion of PLAINTIFF MASCARO's employment responsibilities were carried out by PLAINTIFF MASCARO in Los Angeles County, California.

13.      Plaintiff Sherry Washington ("PLAINTIFF WASHINGTON") is a resident of San Diego County, and is a citizen of the State of California and domiciled in the State of California.   PLAINTIFF WASHINGTON was employed as a sales representative for DEFENDANT SAFILO during all pertinent timeframes.   At all times during her employment with DEFENDANT SAFILO, PLAINTIFF WASHINGTON was misclassified as an independent contractor.   A significant portion of PLAINTIFF WASHINGTON's employment responsibilities were carried out by PLAINTIFF WASHINGTON in San Diego County, California.

14.      Plaintiff Tami Norris ("PLAINTIFF NORRIS") is a resident of San Diego County, and is a citizen of the State of California and domiciled in the State of California.   PLAINTIFF NORRIS was employed as a sales representative for DEFENDANT SAFILO during all pertinent timeframes.   At all times during her employment with DEFENDANT SAFILO, PLAINTIFF NORRIS was misclassified as an independent contractor.   A significant portion of PLAINTIFF NORRIS's employment responsibilities were carried out by PLAINTIFF NORRIS in San Diego County, California.

15.      The Plaintiffs in this matter are collectively referred to herein as "PLAINTIFFS."

/ / /

CLASS ACTION COMPLAINT

**DEFENDANTS**

16.     Defendant Safilo USA, Inc. ("DEFENDANT SAFILO") is a New Jersey company doing business in California, including significant business within Los Angeles County, and including hiring California residents as contractors or employees within the State of California and Los Angeles County. DEFENDANT SAFILO and its managing agents own and operate an international business selling glasses and related eyewear to retailers and consumers. DEFENDANT SAFILO generally employs more than 50 employees working within California. DEFENDANT SAFILO and any relevant affiliates constitute "joint employers" for all relevant purposes under California law.

17.     The true names and capacities of the DOE Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to PLAINTIFFS, who therefore sue such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. PLAINTIFFS will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Doe Defendants when such identities become known.

18.     At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants. Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants. DEFENDANT SAFILO and Doe Defendants are hereafter collectively referred to as "DEFENDANTS."

**THE UNLAWFUL PRACTICE**

1.     DEFENDANT SAFILO hires sales employees within California and forces them to sign a form agreement purporting to label them as independent contractors. The sales representatives must execute this form agreement as a condition precedent to continued employment. *See* Ex. A. Because of the form agreement labeling them independent contractors, the Sales Representatives do not receive any other benefits of California Law usually afforded to employees. This practice clearly violates California law.

2.     As described in Exhibit A, the sales representatives are to take specific actions on behalf of DEFENDANT SAFILO, including to "solicit" orders of DEFENDANT SAFILO's eyewear products

from businesses within a specific geographic territory.  The sales representatives then present the orders to DEFENDANT SAFILO for approval.  The available products and prices are predetermined by DEFENDANT SAFILO.  If approved at DEFENDANT SAFILO's exclusive discretion, the sale is executed and DEFENDANT SAFILO delivers the product.  The sales representative then receives a commission payment in the form of a percentage of the sale, at the discretion of DEFENDANT SAFILO. In essence, despite the repeated reference to the term "independent contractor" in Exhibit A, this is written sales commission arrangement whereby PLAINTIFFS are paid wages in the form of a percentage of their sales.  *See* Labor Code § 204.1 ("Commission wages are compensation paid to any person for services rendered in the sale of such employer's property or services and based proportionately upon the amount or value thereof"); Labor Code § 2751(c)(3) (referring to "a fixed percentage of sales or profits as compensation for work to be performed"); Labor Code § 200(a); *Sciborski v. Pacific Bell Directory*, 205 Cal.App.4th 1152, 1166 (2012) ("[S]ales commissions are considered 'wages.'").

3.      Despite exercising complete and exclusive control over virtually every aspect of the sales commission arrangement, DEFENDANT SAFILO requires the sales representative to pay for all employment-related expenses, including samples, promotional materials, travel expenses, mileage, cell phones, etc.  In addition, DEFENDANT SAFILO charges its Sales Representatives various independent contractor fees including 1% of sales on many transactions.  The required form contract states in part, Sales Representatives "shall be responsible for payment of all expenses incurred in the performance of the Representative's duties under this Agreement, including payment to Safilo USA for sales support services and supplies delivered to Representative such as samples, sample bags, development and maintenance of ESB or similar software, sales coordination, promotional materials and organization of regional and national meetings."  Ex. A, para. 2.

4.      As part of this agreement, DEFENDANT SAFILO also ensured that the sales representatives could only work for DEFENDANT SAFILO in an exclusive sales arrangement:

> While this Agreement is in effect, the Representative shall not perform services in any capacity for (a) any manufacturer, distributor or sales organization that sells eyewear or eyeglass frames to retailers, which, in addition to commercial optical stores, also shall include

opticians, optometrists and ophthalmologists, or (b) any supplier, or customer of a supplier to Safilo USA, unless the Representative has received the prior written consent of Safilo. (Ex. A, para. 7)

5.    In addition, DEFENDANT SAFILO exercised exclusive control over (1) the sales territory of the representative (Ex. A, para. 1), (2) the products sold by the representative and the pricing (Ex. A, para. 2, 4), (3) whether a sale would be approved (Ex. A, para. 2, 4), (4) the types of activities a sales representative could undertake (Ex. A, para. 2), (5) whether and how commissions would be paid including amounts (Ex. A, para. 3), (6) whether commission advance draws would be permitted (Ex. A, para. 3), (7) customer complaints, (Ex. A, para. 2), (8) the length of term of the agreement (Ex. A, para. 5), (9) the confidentiality for certain items (Ex. A, para. 6), and (10) the ownership of the work product of any representative (Ex. A, para. 11).  There are many other indicia of control set forth in this required uniform Agreement, as well as others that are implemented by DEFENDANT SAFILO as part of the pattern and practice.

6.    Section 226.8 of the Labor Code imposes significant penalties on employers who willfully misclassify employees as independent contractors, and also penalizes employers who charge fees or make deductions from compensation to an individual who has been willfully misclassified as an independent contractor.  DEFENDANT SAFILO has clearly violated these legal standards.

7.    The common law test to determine whether a worker is an employee or independent contractor is based on several factors of the employer-worker relationship. They include:

> 1) Who has the right to control the worker's manner and means of performing his or her duties – an independent contractor has more control over the day-to-day details of his or her job than an employee;

> 2) The skill required in the worker's job – independent contractors often perform highly skilled jobs;

> 3) Whether the worker is engaged in a distinct business or occupation – if the worker is engaged in a distinct business or occupation, it is more likely the worker is an independent contractor;

> 4) Whether the work is done under supervision – the more an employer is directly supervising the worker, the more likely he or she is an employee;

5) Whether the worker can be discharged at will or for cause – allowing discharge at will often weighs in favor of an employer-employee relationship;

6) Who supplies the tools, instrumentalities and place of work – if the worker supplies these, he or she is more likely an independent contractor;

7) The length of time the services are to be performed – discrete jobs are generally performed by independent contractors;

8) The method of payment, whether by time or by the job – payment by time generally signals an employee relationship;

9) Whether the work is part of the regular business of the principal – if it is, the worker is more likely an employee;

10) Whether the parties subjectively believe they are creating an employer-employee relationship.

*See S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal.3d 341, 350-51 (1989).

8.    The primary factor determining whether there is an employer-employee relationship is one of control over the relationship.  On the threshold question of the "right to control," DEFENDANT SAFILO had the right to control "the manner and means" of their work and regularly ***and consistently exercised that right*** in many ways.  *See* 22 Cal. Code Regs. § 4304-1 ("[T]o determine whether one performs services for another as an employee, the most important factor is the right of the principal to control the manner and means of accomplishing a desired result.  If the principal has the right to control the manner and means of accomplishing the desired result, whether or not that right is exercised, an employer-employee relationship exists."); *compare* Cal. Lab. Code § 3353 (defined "independent contractor" as person who renders service for a principal who has no right to "control . . . the means by which" work is accomplished).  Moreover, "[w]here there is independent evidence that the principal has the right to control the manner and means of performing the service in question it is not necessary to consider the [below] enumerated factors."

9.    Here, there is compelling evidence that DEFENDANT SAFILO legally and actually controls virtually all aspects of the Sales Representative position, including requiring that they ***work exclusively*** for DEFENDANT SAFILO and no other companies, training them on how to sell their

products via third party and in-house training presentations (e.g., "ride-alongs"), providing them mandatory administrative support to carry out their jobs such as booking and paying for travel, deducting these expenses from paychecks, providing them with the "instrumentalities" needed to perform the job – i.e., the eyewear to sell, and setting and enforcing sales quotas, goals, and other performance standards which require full time work, and retaining exclusive control over what products can be sold, the prices, the terms, the commissions, when commission payments are made.

10.    Accordingly, the sham language in the written "independent contractor" agreements purporting to mischaracterize the reality of the parties' relationship does nothing to protect DEFENDANT SAFILO from legal liability here; rather, it actually underscores DEFENDANT SAFILO's intent and culpability in trying to maintain and disguise its illegal business structure.

11.    Proceeding to the "control" factors, nearly all of them point definitively to Plaintiff and other Sales Representatives being deemed employees rather than "independent contractors" of DEFENDANT SAFILO.  22 Cal. Code Regs. § 4304-1(b) ("The factors enumerated in [4304-1](a) above are indicia of the right to control"); *see also* Cal. Lab Code § 2750.5(c) ("A bona fide independent contractor status is further evidenced by the presence of cumulative factors such as substantial investment other than personal services in the business, holding out to be in business for oneself, bargaining for a contract to complete a specific project for compensation by project rather than by time, control over the time and place the work is performed, supplying the tools or instrumentalities used in the work other than tools and instrumentalities normally and customarily provided by employees, hiring employees, performing work that is not ordinarily in the course of the principals work, performing work that requires a particular skill, holding a license pursuant to the Business and Professions Code, the intent by the parties that the work relationship is of an independent contractor status, or that the relationship is not severable or terminable at will by the principal but gives rise to an action for breach of contract."); *Ayala v. Antelope Valley Newspapers, Inc*., 59 Cal.4th 522, 528 (2014) (provides list of key factors); *S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*, 48 Cal.3d 341 (1989) (same).

12.    Nearly all of the key factors strongly indicate that Sales Representatives are employees, including:

/ / /

- 8 -

- **Whether person performing services is engaged in separate occupation or business**:[1] No

- **Whether the work is part of the regular business of the principal**:[2] Yes.

- **Whether the principal or person providing the services supplies the instrumentalities, tools, and the place of work for the person the work:**[3] DEFENDANT SAFILO supplies the main instrumentalities – eyewear.

- **Whether the type of work is usually done in locality without supervision**:[4] No, as DEFENDANT SAFILO exercises substantial oversight.

- **The skill required to perform the work**:[5] The Sales Representative position requires little if any prior experience, training, or education, other than general sales skills and ability to familiarize oneself with DEFENDANT SAFILO's products and training.

---

[1] 22 Cal. Code Regs. § 4304-(a)(1) ("Whether or not the one performing the services is engaged in a separately established business or occupation"); *see also* Cal. Lab Code § 2750.5(c). "If the person performing services for the principal is not in a separately established occupation or business it will be evidence that the services are performed in employment. If the individual performing the services does not have an independently established occupation or business, and the services are a regular part of the business of the principal, it will be presumed that the services are performed in employment." 22 Cal. Code Regs. § 4304-(b)(7)

[2] 22 Cal. Code Regs. § 4304-(a)(7) ("Whether or not the work is part of the regular business of the principal, or whether the work is not within the regular business of the principal"); *see also* Cal. Lab Code § 2750.5(c) (whether the worker is "performing work that is not ordinarily in the course of the principal's work"). "If the principal is in business and the services performed are a regular part of the business of the principal, it is evidence that the services are performed in employment. It is presumed that if the principal is in business, he has the right to control the manner and means by which services in that business are performed as an incident to the principal's right to protect his business interests. There must be a strong showing that the principal has abandoned that right to overcome the evidence of employment under those circumstances." 22 Cal. Code Regs. § 4304-(b)(6)

[3] 22 Cal. Code Regs. § 4304-(a)(4) ("Whether the principal or the person providing the services supplies the instrumentalities, tools, and the place of work for the person doing the work."); *see also* Cal. Lab Code § 2750.5(c). If the instrumentalities are "of substantial value and supplied by the principal if would indicate the principal had the right to control the manner and means of their use and that the worker would follow a principal's direction in the use of such valuable instrumentalities if the principal chose to give such directions. Similarly, if the facilities are of an intangible nature or unavailable except through the principal, such as a trade name, office facilities, advertising, merchandise, inventory, or communications, the worker would also be presumed to use such facilities in a way specified by the principal if the principal so chose to specify so that the worker can insure their continued use and availability." 22 Cal. Code Regs. § 4304-(b)(1)

[4] 22 Cal. Code Regs. § 4304-(a)(2) ("The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of a principal without supervision").

[5] 22 Cal. Code Regs. § 4304-(a)(3) ("The skill required in performing the services and accomplishing the desired result."). "Unskilled labor is usually supervised and persons performing services, which require little or no skill or experience are customarily regarded as employees. Even when skill is required, such as an artisan, and the services are in incident of the business of the principal, the principal would usually be considered to have the right to control the manner and means of performing the service incident to its business." 22 Cal. Code Regs. § 4304-(b)(2)

- **Whether the length of time for the work is an isolated event or continuous in nature:**[6] The work was continuous – some of the PLAINTIFF's worked in the same position at DEFENDANT SAFILO nearly 20 years and many of their colleagues also worked in the same position for DEFENDANT SAFILO for many, many years.

- **Whether the workers are paid by time, piece rate, or by the job:**[7] PLAINTIFFS were paid by commission on regular intervals each month and generally similar amounts.

- **The worker's opportunity for profit or loss depending on the worker's managerial skill:**[8] Plaintiffs had no risk of any loss and their commissions did not vary based on their "managerial skill," but merely the amount of their sales skill and effort.

- **The workers investment in equipment or materials required for the task or the employment of helpers:**[9] Sales Representatives hired no helpers and the only "investment" in equipment was because DEFENDANT SAFILO improperly required them to "purchase" the merchandise they were selling for it as part of its regular business.

13.    Indeed, the only factor that could possibly favor DEFENDANT SAFILO in this analysis is "whether the parties believe they are creating the relationship of employer and employee," but that is only because DEFENDANT SAFILO consistently required employees to sign form documents asserting (falsely under California law) they were "independent contractors."  22 Cal. Code Regs. § 4304-(a)(8).  This underscores the control DEFENDANT SAFILO had over the Sales Representatives, including DEFENDANT SAFILO's ability to force upon them form documents with false designations designed to benefit DEFENDANT SAFILO to the detriment of the Sales Representatives.  However, it

---

[6] 22 Cal. Code Regs. § 4304-(a)(5) ("The length of time for which the services are performed to determine whether the performance is an isolated event or continuous in nature.").  "If the time in which the service is performed is short, the worker is less apt to subject himself to control as to details of performing the service. . . . If the services are performed on a continuing basis it would be evidence of employment, especially if the services are a regular part of the principal's business.  The time of performing services and the method of payment may result in strong evidence of employment if the performance and payment occur during regular intervals at regular times and payment is in regular amounts." 22 Cal. Code Regs. § 4304-(b)(3)

[7] 22 Cal. Code Regs. § 4304-(a)(6) ("The method of payment, whether by the time, a piece rate, or by the job").

[8] *S.G. Borello*, 48 Cal.3d 341 (1989).

[9] *S.G. Borello*, 48 Cal.3d 341 (1989).

is well settled that "[t]he terminology used in an agreement between a principal and a worker is not conclusive of the relationship." 22 Cal. Code Regs. § 4304-(b)(5).

## CLASS ALLEGATIONS

14.    Pursuant to Section 382 of the Code of Civil Procedure PLAINTIFFS bring this action on behalf of themselves and a similarly situated class of California Sales Representatives who worked for Defendant at any time during the four-year period preceding the filing of this Complaint ("CLASS"). The members of the CLASS are so numerous that joinder of all members would be unfeasible and impractical.  The specific number of CLASS members is unknown but is greater than 50.  The precise scope of the class can be defined by Defendants' records.

15.    There are common questions of law and fact to the CLASS members including: (1) whether they were subjected to an unlawful policy of designating them as independent contractors; (2) whether as a result of this policy and other generally applicable polices, they have sustained losses; (3) whether DEFENDANTS engaged in unfair business practices; (4) whether DEFENDANTS violated various provisions of the Labor Code; and (5) whether the CLASS is entitled to restitution under California's Unfair Competition Law.

16.    These common issues of fact and law predominate over any individualized issues.

17.    The PLAINTIFFS' claims are typical of the CLASS members in that the PLAINTIFFS and CLASS members were exposed to the same unlawful, systematic and companywide policies discussed herein.

18.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

19.    PLAINTIFFS and their counsel will fairly and adequately protect the interests of the proposed CLASS.

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## Willful Misclassification as Independent Contractor

### (Labor Code 226.8)

### (On Behalf Of All PLAINTIFFS And CLASS Against All DEFENDANTS)

20.    PLAINTIFFS incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

21.    Labor Code § 226.8 prohibits any person or employer from willfully misclassifying an individual as an independent contractor.

22.    Since at least 2013 until the present, DEFENDANTS have maintained a uniform policy with respect to all Sales Representatives hired to work in California.

23.    Under this uniform policy, DEFENDANTS have misclassified all of these Sales Representatives as independent contractors.

24.    DEFENDANTS also charged PLAINTIFFS an independent contractor fees including 1% of sales on many transactions, and improperly deducted various business expenses and related charges from their paychecks.

25.    As described above, DEFENDANTS, at all times relevant hereto, retained control over the manner and means of accomplishing its desired business results, and retained control over its operations, such that an employer-employee relationship was created between DEFENDANTS and the Sales Representatives.

26.    Through their misclassification of every Sales Representative, DEFENDANTS have engaged in a pattern and practice of willful misclassification of its employees as independent contractors for its own financial benefit.

27.    PLAINTIFFS are entitled to recover the civil penalties specified in the Labor Code for DEFENDANTS' violations of § 226.8 in an amount of not less than ten thousand dollars ($5,000) and up to twenty-five thousand dollars ($25,000) for each violation, in addition to any other penalties or fines permitted by law.

/ / /

28.    PLAINTIFFS are entitled to recover their reasonable attorney fees and costs in bringing this action.

29.    DEFENDANTS are subject to an order requiring it to provide public notice of its violation of Section 226.8, as required under sub-sections (e) and (f) thereof, in the event this Court determines that a violation has been committed.

30.    These violations are asserted on behalf of the PLAINTIFFS and the CLASS, and also form the underlying basis for violations of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.*, and of California's Private Attorneys General Act ("PAGA"), California Labor Code §§ 2699, *et seq.*

## SECOND CAUSE OF ACTION

### Reimbursement of Business Expenses

**(California Labor Code § 2802)**

**(On Behalf Of All PLAINTIFFS And CLASS Against All DEFENDANTS)**

31.    PLAINTIFFS incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

32.    While acting on the direct instruction of DEFENDANTS and discharging their required duties, PLAINTIFFS incurred work-related expenses.

33.    Such expenses include but are not limited to the costs of purchase or lease of vehicles, fuel, maintenance, and other vehicle operating costs; various forms of insurance; communications equipment; electronic message service; cellular telephones; laundry services; promotional materials; eyewear samples; independent contractor fees.

34.    Many of these costs and expenses were deducted by DEFENDANTS from PLAINTIFFS' paychecks.

35.    PLAINTIFFS necessarily incurred these substantial expenses and losses as a direct result of performing their job duties for DEFENDANTS.

36.    DEFENDANTS have failed to indemnify or in any manner reimburse PLAINTIFFS for these expenditures and losses.

/ / /

CLASS ACTION COMPLAINT

37.     By misclassifying Sales Representatives as "independent contractors," and further by requiring those employees to pay expenses and cover losses that they incurred in direct consequence of the discharge of their duties for DEFENDANTS and/or in obedience to DEFENDANTS' direction, DEFENDANTS have violated and continue to violate Cal. Labor Code § 2802.

38.     As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFFS have suffered substantial losses according to proof, as well as pre-judgment interest, costs, and attorney fees for the prosecution of this action.

39.     These violations are asserted on behalf of the PLAINTIFFS and the CLASS, and also form the underlying basis for violations of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.*, and of California's Private Attorneys General Act ("PAGA"), California Labor Code §§ 2699, *et seq.*

## THIRD CAUSE OF ACTION

### Unlawful Deductions From Wages

### (Labor Code §§ 221-224, 400-410)

### (On Behalf Of All PLAINTIFFS And CLASS Against All DEFENDANTS)

40.     PLAINTIFFS incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

41.     Labor Code § 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

42.     Labor Code §§ 400-410 ("Employee Bond Law") provide the limited circumstances under which an employer can exact a cash bond from its employees. These provisions are designed to protect employees against the very real danger of an employer taking or misappropriating employee funds held by the employer in trust.

43.     These and related statutes, along with California's fundamental public policy protecting wages, prohibit employers from subjecting employees to unanticipated or unpredicted reductions in their wages; making employees the insurers of their employer's business losses; otherwise passing the ordinary business losses of the employer onto the employee; taking deductions from wages for business losses unless the employer can establish that the loss was caused by a dishonest or willful act, or gross

1  negligence of the employee; or taking other unpredictable deductions that may impose a special hardship

2  on employees.

3         44.     DEFENDANTS have violated Cal. Labor Code §§ 221, and 400-410, by unlawfully

4  taking deductions from PLAINTIFFS' compensation to cover certain ordinary business expenses of

5  DEFENDANTS and charging various fees to PLAINTIFFS.

6         45.     Because DEFENDANTS took unlawful deductions from PLAINTIFFS' compensation,

7  DEFENDANTS are liable to PLAINTIFFS for the compensation that should have been paid but for the

8  unlawful deductions.

9         46.     By unlawfully deducting wages and failing to pay PLAINTIFFS, DEFENDANTS are

10  also liable for penalties, reasonable attorneys' fees, and costs.

11        47.     These violations are asserted on behalf of the PLAINTIFFS and the CLASS, and also

12  form the underlying basis for violations of California's Unfair Competition Law ("UCL"), Business &

13  Professions Code §§ 17200, *et seq.*, and of California's Private Attorneys General Act ("PAGA"),

14  California Labor Code §§ 2699, *et seq.*

15                        **FORTH CAUSE OF ACTION**

16                           **Coerced Purchases**

17                          **(Labor Code § 450)**

18        **(On Behalf Of All PLAINTIFFS And CLASS Against All DEFENDANTS)**

19        48.     PLAINTIFFS incorporate by this reference the allegations contained in the preceding

20  paragraphs above as if fully set forth herein.

21        49.     DEFENDANTS have compelled and/or coerced PLAINTIFFS to patronize

22  DEFENDANTS by requiring PLAINTIFFS to lease or purchase equipment, services, eyewear samples,

23  and other items directly from DEFENDANTS and/or other companies in violation of Cal. Labor Code

24  § 450.

25        50.     By unlawfully deducting wages and failing to pay PLAINTIFFS, DEFENDANTS are

26  also liable for penalties, reasonable attorneys' fees, and costs.

27        51.     These violations are asserted on behalf of the PLAINTIFFS and the CLASS, and also

28  form the underlying basis for violations of California's Unfair Competition Law ("UCL"), Business &

Professions Code §§ 17200, *et seq.*, and of California's Private Attorneys General Act ("PAGA"), California Labor Code §§ 2699, *et seq.*

## FIFTH CAUSE OF ACTION

### Failure To Furnish Accurate Wage Statements

### (Labor Code §§ 226, 226.3)

### (On Behalf Of All PLAINTIFFS And CLASS Against All DEFENDANTS)

52.    PLAINTIFFS incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

53.    Cal. Labor Code § 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, accurate statements of accurate statements of earnings, commissions, rates of pay and deductions, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000).

54.    DEFENDANTS knowingly and intentionally failed to furnish PLAINTIFFS with timely, itemized statements showing the accurate statements of earnings, commissions, rates of pay and deductions.

55.    As a result, DEFENDANTS are liable to PLAINTIFFS for the amounts provided by Cal. Labor Code § 226(b) and for penalties, and attorneys' fees.

56.    These violations are asserted on behalf of the PLAINTIFFS and the CLASS, and also form the underlying basis for violations of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.*, and of California's Private Attorneys General Act ("PAGA"), California Labor Code §§ 2699, *et seq.*

## SIXTH CAUSE OF ACTION

### Failure To Keep Accurate Payroll Records

### (Labor Code §§ 1174, 1174.5)

### (On Behalf Of All PLAINTIFFS And CLASS Against All DEFENDANTS)

57.    PLAINTIFFS incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

58.     DEFENDANTS have violated Cal. Labor Code § 1174 by willfully failing to keep required payroll records showing accurate statements of earnings, commissions, rates of pay and deductions.

59.     As a direct and proximate result of DEFENDANTS' failure to maintain payroll records, PLAINTIFFS have suffered actual economic harm as they have been precluded from accurately monitoring earnings, commissions, rates of pay and deductions.

60.     PLAINTIFFS are entitled to recover their reasonable attorney fees and costs in bringing this action.

61.     These violations are asserted on behalf of the PLAINTIFFS and the CLASS, and also form the underlying basis for violations of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.*, and of California's Private Attorneys General Act ("PAGA"), California Labor Code §§ 2699, *et seq.*

## SEVENTH CAUSE OF ACTION

### Failure to Pay Wages Owed, Waiting Time Penalties

### (Labor Code §§ 201-208, 227.3, 1199, 2751)

### (On Behalf Of All PLAINTIFFS And CLASS Against All DEFENDANTS)

62.     PLAINTIFFS incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

63.     The employer must establish regular semi-monthly paydays each month and is required to post a notice that shows the day, time and location of payment under Cal. Labor Code §§ 204, 207.

64.     Commission wages must be described in writing under Cal. Labor Code § 2751.

65.     Cal. Labor Code §§ 201 & 227.3 requires an employer who discharges an employee to pay all compensation due and owing to that employee immediately upon discharge.

66.     Cal. Labor Code § 202 requires an employer to pay all compensation due and owing to an employee who quits within 72 hours of that employee quitting, unless the employee provides at least 72 hours notice of quitting, in which case all compensation is due at the end of the employee's final day of work.

///

67.     Cal. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge, as required by § 201 or § 202, then the employer is liable for waiting time penalties in the form of continued compensation of up to 30 work days.

68.     Pursuant to Labor Code 1199, "Every employer or other person acting either individually or as an officer, agent, or employee of another person is guilty of a misdemeanor and is punishable by a fine of not less than one hundred dollars ($100) or by imprisonment for not less than 30 days, or by both, who does any of the following: (a) Requires or causes any employee to work for longer hours than those fixed, or under conditions of labor prohibited by an order of the commission. (b) Pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission. (c) Violates or refuses or neglects to comply with any provision of this chapter or any order or ruling of the commission."

69.     DEFENDANTS willfully failed and refused to timely pay compensation and wages on a semi-monthly basis, including unpaid expenses and sums wrongfully deducted from compensation, to PLAINTIFFS.  These unpaid amounts are outstanding.

70.     DEFENDANTS are also liable to PLAINTIFFS for waiting time penalties, together with interest thereon and reasonable attorneys' fees and costs.

71.     These violations are asserted on behalf of the PLAINTIFFS and the CLASS, and also form the underlying basis for violations of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.*, and of California's Private Attorneys General Act ("PAGA"), California Labor Code §§ 2699, *et seq.*

### EIGHTH CAUSE OF ACTION

### Unlawful Commissions Agreement

### (Labor Code §§ 2751, 432.5)

### (On Behalf Of All PLAINTIFFS And CLASS Against All DEFENDANTS)

72.     PLAINTIFFS incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

73.     Under Cal. Labor Code § 2751, whenever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method

of payment of the employee involves commissions, the contract shall be in writing and shall set forth the method by which the commissions shall be computed and paid.

74.     The employer shall give a signed copy of the contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee.   In the case of a contract that expires and where the parties nevertheless continue to work under the terms of the expired contract, the contract terms are presumed to remain in full force and effect until the contract is superseded or employment is terminated by either party.

75.     Exhibit A violates Labor Code § 2751 by, among other failures, failing to set forth with specificity when and how commissions will be paid, giving unfettered discretion to DEFENDANTS in terms of if, when and how commissions will be paid, whether sales will be approved, and unstated charges and fees.

76.     Further, because it is obvious that this independent contractor agreement (*see* Ex. A) is invalid and unlawful, DEFENDANTS have violated Labor Code § 432.5, which provides: "No employer, or agent, manager, superintendent, or officer thereof, shall require any employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer, or agent, manager, superintendent, or officer thereof to be prohibited by law."

77.     PLAINTIFFS are entitled to recover their reasonable attorney fees and costs in bringing this action.

78.     These violations are asserted on behalf of the PLAINTIFFS and the CLASS, and also form the underlying basis for violations of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.*, and of California's Private Attorneys General Act ("PAGA"), California Labor Code §§ 2699, *et seq.*

## NINTH CAUSE OF ACTION

### Violation Of California Choice Of Law And Venue

### (Labor Code §§ 925, 432.5)

### (On Behalf Of All PLAINTIFFS And CLASS Against All DEFENDANTS)

79.     PLAINTIFFS incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

80.     DEFENDANTS have a uniform policy of requiring Sales Representatives to agree to venue for adjudication of disputes in states other than California, pursuant to New York law. *See* Ex. A, para. 14.

81.     PLAINTIFFS were required to execute this agreement, which renews each month including after January 1, 2017. *See* Ex. A, para. 5.

82.     Accordingly, all such illegal provisions, including Paragraph 14 of Exhibit A in its entirety, are unlawful and voidable under Section 925 of the California Labor Code.

83.     Further, because it is obvious that this independent contractor agreement (*see* Ex. A) is invalid and unlawful, DEFENDANTS have violated Labor Code § 432.5, which provides: "No employer, or agent, manager, superintendent, or officer thereof, shall require any employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer, or agent, manager, superintendent, or officer thereof to be prohibited by law."

84.     PLAINTIFFS seek the invalidation of all such provisions, including Paragraph 14 of Exhibit A in its entirety, and the recovery of its attorneys' fees and costs.

85.     These violations are asserted on behalf of the PLAINTIFFS and the CLASS, and also form the underlying basis for violations of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.*, and of California's Private Attorneys General Act ("PAGA"), California Labor Code §§ 2699, *et seq.*

## TENTH CAUSE OF ACTION

### Violation Of California's Workers' Compensation Laws

### (Labor Code §§ 3700-3700.5)

### (On Behalf Of All PLAINTIFFS And CLASS Against All DEFENDANTS)

86.     PLAINTIFFS incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

87.     Under Labor Code § 3700, all California employers must provide workers' compensation benefits to their employees. If a business employs one or more employees, then it must satisfy the requirement of the law.

/ / /

- 20 -

88.    California Labor Code Section 3351 defines who is an employee, and therefore who can be covered under a workers' compensation policy.

89.    PLAINTIFFS are employees of DEFENDANTS.  Yet, DEFENDANTS failed to provide workers' compensation benefits to PLAINTIFFS.

90.    Under Labor Code § 3700.5, the failure to secure the payment of compensation as required by this article by one who knew, or because of his or her knowledge or experience should be reasonably expected to have known, of the obligation to secure the payment of compensation, is a misdemeanor punishable by imprisonment in the county jail for up to one year, or by a fine of up to double the amount of premium, as determined by the court, that would otherwise have been due to secure the payment of compensation during the time compensation was not secured, but not less than ten thousand dollars ($10,000), or by both that imprisonment and fine.

91.    A second or subsequent conviction shall be punished by imprisonment in the county jail for a period not to exceed one year, by a fine of triple the amount of premium, or by both that imprisonment and fine, as determined by the court, that would otherwise have been due to secure the payment of compensation during the time payment was not secured, but not less than fifty thousand dollars ($50,000).

92.    PLAINTIFFS are entitled to recover their reasonable attorney fees and costs in bringing this action.

93.    These violations are asserted on behalf of the PLAINTIFFS and the CLASS, and also form the underlying basis for violations of California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, *et seq.*, and of California's Private Attorneys General Act ("PAGA"), California Labor Code §§ 2699, *et seq.*

## ELEVENTH CAUSE OF ACTION

### Violation Of Unfair Competition Law

### (Business and Professions Code §§ 17200, *et seq.*)

### (On Behalf Of All PLAINTIFFS And CLASS Against All DEFENDANTS)

94.    PLAINTIFFS incorporate by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

95.     DEFENDANTS' acts constitute a continuing and ongoing unlawful activity prohibited by the UCL and justifies the issuance of an injunction, restitution, and other equitable relief pursuant to California Business and Professions Code §17203.

96.     For the four (4) years preceding this lawsuit, DEFENDANTS engaged and continued to engage in unfair and unlawful business practices in California.

97.     DEFENDANTS' use of such unlawful and unfair business practices constitutes unfair competition and provides an unfair advantage over its competitors.

98.     These actions are detailed above in causes of action one through ten, and all of these illegal and unfair acts are incorporated as if fully set forth herein.

99.     DEFENDANTS' wrongful business practices have caused injury to PLAINTIFFS, and PLAINTIFFS are entitled to restitution and other equitable relief.

100.    PLAINTIFFS are entitled to recover their reasonable attorney fees and costs in bringing this action.

101.    Pursuant to section 17203 of the California Business and Professions Code, PLAINTIFFS seek an order of this court enjoining DEFENDANTS from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those set forth in the complaint.  PLAINTIFFS also seek an order requiring DEFENDANTS to make full restitution of all moneys it wrongfully obtained from PLAINTIFFS, among other equitable remedies.

102.    This cause of action is asserted on behalf of the PLAINTIFFS and the CLASS.

## TWELFTH CAUSE OF ACTION

### Private Attorneys General Act

### (Labor Code § 2699, *et seq.*)

**(On Behalf Of PLAINTIFF ALMEIDA in her representative capacity as private attorney general against DEFENDANT SAFILO)**

103.    PLAINTIFF ALMEIDA gave written notice of the alleged PAGA violations to the Labor and Workforce Development Agency ("LWDA") via its electronic system on October 5, 2017.  *See* **Exhibit B.**  The $75 filing fee has been paid.

/ / /

104. PLAINTIFF ALMEIDA also gave notice to DEFENDANT SAFILO by certified mail postmarked on October 5, 2017. *See* Ex. B.

105. 65 days have passed since PLAINTIFF ALMEIDA gave written notice to the LWDA and DEFENDANT SAFILO, and the LWDA did not provide notice of its intention to investigate DEFENDANT SAFILO's violations. These alleged violations have not been cured.

106. PLAINTIFF ALMEIDA is an "Aggrieved Employee" under PAGA, as she was employed by DEFENDANT SAFILO during the applicable statutory period and suffered one or more of the Labor Code violations set forth herein. Accordingly, PLAINTIFF ALMEIDA seeks to recover on behalf of herself and all other current and former Aggrieved Employees, the civil penalties provided by PAGA, plus reasonable attorney's fees and costs.

107. PLAINTIFF ALMEIDA seeks to recover the PAGA civil penalties through a representative action permitted by PAGA and the California Supreme Court in *Arias v. Superior Court*, 46 Cal 4th 969 (2009). Therefore, class certification of the PAGA claims is not required.

108. PLAINTIFF ALMEIDA seeks PAGA penalties pursuant to the Labor Code Violations set forth above in all causes of action set forth in this Complaint, and these alleged violations are incorporated into this PAGA cause of action as set forth fully herein. These penalties include the penalties set forth for each specific Labor Code violation and/or the penalties set forth in Labor Code 2699(f), of one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

109. In addition, PLAINTIFF ALMEIDA summarizes some of the PAGA Labor Code violations as follows:

Unlawful Deductions from Pay Labor Code §§ 221-223, 400-410, 450

110. DEFENDANTS made various deductions from the pay of Aggrieved Employees for various unlawful charges and expenses related to its unlawful independent contractor arrangements. Employers had no right to deduct, withhold or withdraw these amounts from the pay of Aggrieved Employees. These actions violated Labor Code sections 221-223, among other Labor Code provisions including 400-410.

Unlawful Failure to Reimburse Work-Related Expenses

111.   Labor Code section 2802 provides that "[a]n employer shall indemnify an employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ."  Subsection (c) of Labor Code section 2802 further provides that "[f]or purposes of this section, the terms necessary expenditures or losses" shall include all reasonable costs, including but not limited to, attorneys' fees incurred by the employee enforcing the rights granted by this section." *See also Cochran v. Schwan's Home Services, Inc*., 228 Cal.App.4th 1137 (2014).  Among other things, DEFENDANTS required Plaintiffs and Aggrieved Employees to spend thousands of dollars per year purchasing eyewear to sell for the company from the company, driving well-over 10,000 miles per year in their own vehicles on work-related sales calls for Employer, and other similar out-of-pocket expenses that were never reimbursed because Plaintiff's and Aggrieved Employees were improperly deemed "independent contractors" when they were actually employees of DEFENDANTS.

Unlawful Failure to Timely Pay Wages Including Those Due Upon Termination

112.   Labor Code section 201 provides "if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.  Labor Code section 202 provides "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his intention to quit, in which case the employee is entitled to his wages at the time of quitting."  Labor Code section 208 requires that all final wages be paid to an employee who is terminated at the place of discharge and to an employee who voluntarily resigns at the place where the employee has been working.  Pursuant to sections 203 and 256 of the Labor Code, Plaintiff and similarly situated individuals are now entitled to recover up to thirty (30) days of wages due to Employer's willful failure to comply with the statutory requirements of sections 201 and 202 of the Labor Code.  In addition, because Employer violated California Labor Code sections 201, 202, 203, 1199, Employer is liable for civil penalties pursuant to California Labor Code section 2699 *et seq*.

Unlawful Failure to Furnish Accurate Wage Statements

113.   Labor Code section 226 requires an employer to provide employees with accurate itemized wage statements showing (1) gross wages earned, (2) total hours worked by an non-exempt

employee, (3) piece rates, if applicable, (4) all deductions, (5) net wages earned, (6) the inclusive dates of the period for which the employee is being paid, (7) the name of the employee and his or her social security number or identification number, (8) the name and address of the legal entity that is the employer, and (9) all hourly rates in effect and the corresponding number of hours worked.

<u>Unlawful Failure to Maintain Adequate Records</u>

114.    Labor Code § 1174 states, in pertinent part, that "[e]very person employee labor in this state shall . . . (c) Keep a record showing the names and addresses of all employees employed . . . [and] (d) Keep, at a central location in the state . . . or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to . . . employees employed at the respective . . . establishments.  These records shall be kept . . . in a file for not less than three years." In addition, Labor Code § 353 also requires employers to keep accurate records of all gratuities or tips they receive, directly or indirectly, which may not be collected by "managers" or owners under Labor Code section 351.  Labor Code § 1174.5 provides that "any person employing labor who willfully fails to maintain the records required under subdivision (c) of section 1174 or accurate or complete records required by subdivision (d) of section 1174 . . . shall be subject to a civil penalty of five hundred dollars ($500).  Subdivision (d) of section 1174.5 states that "[a]ny person, or officer or agent thereof, is guilty of a misdemeanor who fails to keep any of the records required by section 1174."

<u>Unlawful Commissions Agreement</u>

115.    Under Cal. Labor Code § 2751, whenever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves commissions, the contract shall be in writing and shall set forth the method by which the commissions shall be computed and paid.  The employer shall give a signed copy of the contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee.   In the case of a contract that expires and where the parties nevertheless continue to work under the terms of the expired contract, the contract terms are presumed to remain in full force and effect until the contract is superseded or employment is terminated by either party.

/ / /

/ / /

116.    Exhibit A violates Labor Code § 2751 by, among other failures, failing to set forth with specificity when and how commissions will be paid, giving unfettered discretion to DEFENDANTS in terms of if, when and how commissions will be paid.

117.    Further, because it is obvious that this independent contractor agreement is invalid and unlawful, DEFENDANTS have violated Labor Code § 432.5, which provides: "No employer, or agent, manager, superintendent, or officer thereof, shall require any employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer, or agent, manager, superintendent, or officer thereof to be prohibited by law."

Violation Of California Choice Of Law And Venue

118.    DEFENDANTS have a uniform policy of requiring Sales Representatives to agree to venue for adjudication of disputes in the State of New York pursuant to New York law.  *See* Ex. A, para. 14.  PLAINTIFFS were required to execute this agreement, which renews each month including after January 1, 2017.  *See* Ex. A, para. 5.  Accordingly, all such illegal provisions, including Paragraph 14 of Exhibit A in its entirety, are unlawful and voidable under Section 925 of the California Labor Code.

Violation Of California's Workers' Compensation Laws

119.    Under Labor Code § 3700, all California employers must provide workers' compensation benefits to their employees.  If a business employs one or more employees, then it must satisfy the requirement of the law.  California Labor Code § 3351 defines who is an employee, and therefore who can be covered under a workers' compensation policy.    PLAINTIFFS are employees of DEFENDANTS.    Yet, DEFENDANTS failed to provide workers' compensation benefits to PLAINTIFFS.

120.    Under Labor Code § 3700.5, the failure to secure the payment of compensation as required by this article by one who knew, or because of his or her knowledge or experience should be reasonably expected to have known, of the obligation to secure the payment of compensation, is a misdemeanor punishable by imprisonment in the county jail for up to one year, or by a fine of up to double the amount of premium, as determined by the court, that would otherwise have been due to

secure the payment of compensation during the time compensation was not secured, but not less than ten thousand dollars ($10,000), or by both that imprisonment and fine.

121. A second or subsequent conviction shall be punished by imprisonment in the county jail for a period not to exceed one year, by a fine of triple the amount of premium, or by both that imprisonment and fine, as determined by the court, that would otherwise have been due to secure the payment of compensation during the time payment was not secured, but not less than fifty thousand dollars ($50,000).

122. As a result of DEFENDANT SAFILO's violations including but not limited to California Labor Code sections 98.6, 201-203, 204, 206, 206.5, 210, 216, 221-223, 226, 226.3, 226.6, 226.7, 227.3, 256, 351, 432.5, 510, 512, 558, 925, 1102.5, 1174, 1182.12, 1194, 1197, 1199, 1197.1, 2751, 2802, 2810.5, 3700-3700.5 and all applicable Wage Orders.

123. Accordingly, PLAINTIFF ALMEIDA respectfully request that the Court award judgment and relief in their favor as described herein.

124. Pursuant to section 2699(g) of the Labor Code, or other applicable law, Plaintiff ALMEIDA is entitled to recover statutory penalties, interest, injunctive relief, costs, and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray for relief and judgment as follows:

1. An award of civil penalties pursuant to PAGA;

2. An award of reasonable attorneys' fees and costs pursuant to California Labor Code § 2699(g), the Labor Code, and/or other applicable law;

3. Wages, expenses, civil penalties, and applicable statutory penalties;

4. Pre-judgment and post-judgment interest;

5. Attorneys' fees and costs reasonably incurred;

6. Punitive and/or exemplary damage, if allowed;

7. Equitable relief, if allowed, including restitution;

8. The striking of unlawful contractual provisions, including Paragraph 14 of Ex. A;

/ / /

/ / /

1        9.      Such other relief that the Court deems proper.

2

3    Dated:  December 11, 2017             **HARDIN & LOTT**

4

5                        By: _____

6                             Ward J. Lott

                         Attorney for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated:  December 11, 2017                    **HARDIN & LOTT**

By: _____
                                               Ward J. Lott
                                               Attorney for Plaintiffs

# EXHIBIT A

# SAFILO USA INC.

## INDEPENDENT SALES REPRESENTATIVE AGREEMENT

THIS INDEPENDENT SALES REPRESENTATIVE AGREEMENT ("Agreement") is entered into between Safilo USA, Inc., a New Jersey Corporation, having principal offices at 801 Jefferson Road, Parsippany, New Jersey 07054-3753 ("Safilo USA") and  Valerie Almeida ("Representative"), with an office at ███████████████Valencia, CA 91354  (collectively, the "Parties", or, individually, a "Party").  This Agreement shall be effective as of the date of the signature of the last Party to sign.

WHEREAS, Safilo USA wishes to engage the Representative in accordance with the terms of this Agreement to act as its Independent Sales Representative to solicit and procure orders of Safilo USA product lines within an assigned territory, and the Representative agrees to perform such services.

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

1. **The Appointment and Territory**

    Safilo USA appoints the Representative as its Independent Sales Representative to solicit and procure orders for Safilo USA product lines (the "Products") to customers located in the territory described in Exhibit A hereto.(the "Territory").  Safilo USA shall have the right to modify the Territory from time to time in its sole discretion.

2. **Agreements and Understandings of the Representative**

    a. For the convenience of customers, the Representative shall maintain an office within the Territory and may obtain telephone and other commercial listings in the Representative's name or trade name.  Listings in the Representative's name or trade name may state that the Representative is an independent sales representative for the products or is an independent sales representative for Safilo USA.

    b. The Representative shall use his/her/its best efforts to promote the sale of the Products within the Territory in a clear, knowledgeable and professional manner and shall conduct business in a way that will maintain and increase the goodwill and the reputation of Safilo USA.

    c. The Representative shall submit all orders obtained from customers to Safilo USA for its approval.  Safilo USA will accept or reject orders obtained and submitted by the Representative in accordance with the standards set forth in Paragraph 4(a) of this Agreement, below.

    d. The Representative shall have no authority to act for or bind Safilo USA in any way.   Therefore, as non-exclusive examples only of acts which the Representative shall have no authority to perform, the Representative shall not

      i. Incur any indebtedness in Safilo USA's name;

      ii. Maintain an office telephone or listing in Safilo USA's name;

      iii. Make any representation or warranty to any person in Safilo USA's name; or

      iv. Represent that the Representative's relationship with Safilo USA is other than that of Independent Sales Representative with respect to the Products.

    e. The Representative's activities under this Agreement shall be limited to the solicitation of sales of the Products. The Representative shall refrain from such other activities as, for example:

      i. repairing or replacing defective or otherwise unsatisfactory products,

      ii. collecting delinquent accounts,

      iii. investigating credit,

      iv. approving orders,

      v. repossessing products,

      vi. securing deposits on sales,

      vii. providing shipping information, or

      viii. coordinating deliveries.

    f. The Representative shall report all customer inquiries or complaints promptly to Safilo USA's office.

    g. The Parties explicitly understand and agree that the Representative shall determine when, where, how and by whom the Representative's duties under this Agreement shall be carried out, consistent with the Representative's overall responsibilities hereunder.  Representative agrees to give Safilo USA advance notice of any absence from the Territory exceeding two (2) weeks so that Safilo USA can make arrangements to meet the needs of its customers in the Territory.

    h. The Representative shall have the right and authority to hire employees to perform the Representative's responsibilities under this Agreement, subject to the same limitations referred to in subparagraphs (d) and (e) of this paragraph 2, provided that;

      i. The Representative's employees shall function under the exclusive direction and control of the Representative; and

      ii. The Representative shall be accountable for the performance of the Representative's employees.

    i. The Representative shall be solely responsible for payment of all expenses incurred in the performance of the Representative's duties under this Agreement, including payment to Safilo USA for sales support services and supplies delivered to Representative such as samples and sample bags, development and maintenance of ESB or similar software, sales coordination, promotional materials and organization of regional and national meetings.

    j. The Representative agrees to indemnify Safilo USA, its shareholders, officers, agents and employees against any losses, expenses, damages or costs (including attorneys' fees) that any of them might incur by reason of any claim, action or suit brought against any or all of them arising from any agreement, commitment, undertaking, representation or warranty made or given by the Representative to any person, corporation or other entity, unless the agreement, commitment, undertaking, representation or warranty was specifically authorized by or under this Agreement or was otherwise specifically authorized by Safilo USA in a writing signed by its authorized representative.

    k.    The Representative represents by signing this Agreement that neither the Representative nor any of the Representative's agents is subject to any contractual or legal obligation that conflicts with the obligations of this Agreement.

**3.    Commissions**

    a.    As compensation for the services of the Representative provided hereunder, **Safilo USA** will pay a commission to the Representative at the commission rate for the collections specified on Addendum 1 on "Net Shipments" of Products sold to customers located in the Territory whether the orders for such sales were obtained by the Representative, by **Safilo USA**, or in any other manner; provided, however, that **Safilo USA** will not pay a commission on sales to customers that are "House Accounts" as defined in Paragraph 3(b) below. If the Representative opts to participate in optional sales programs offered by Safilo USA from time to time, the Representative will receive commissions at the rate and as otherwise provided for each such optional sales program. "Net Shipments" means the dollar value, as reflected in sales invoices, of Products shipped by **Safilo USA**, after deducting therefrom all returns, allowances, freight charges, discounts, costs of collection, and similar items allowed or paid by **Safilo USA** in its sole and absolute discretion.

    b.    A customer shall be a House Account if (1) it is a multiple-outlet dispenser of the Products and (2) **Safilo USA** determines, in its sole discretion, that it wishes to make sales to such customer on a centralized basis. **Safilo USA** shall maintain a list of House Accounts, which shall be available to the Representative upon reasonable request.

    c.    **Safilo USA** reserves the right to re-determine the commission rate(s) effective as of the first or any subsequent renewal date of this Agreement under subparagraph 5(a). **Safilo USA** will endeavor, but shall not be required, to notify the Representative of any change in the commission rate(s) thirty (30) days prior to each such renewal date.

    d.    If **Safilo USA** does not receive timely payment for Products for which commissions are payable or have been paid, **Safilo USA** shall have the right to reduce current commissions or to offset against future commissions otherwise payable to the Representative  the amount of any commissions attributable to unpaid invoices for Products. To the extent the amount to be reduced or offset under this paragraph 3(d) exceeds the commission amount otherwise payable to Representative, the Representative agrees to refund the excess to **Safilo USA** within 30 days of notification by Safilo USA of its rights to a refund hereunder.

    e.    **Safilo USA** will pay commissions payable under this paragraph 3 once per month. Commissions will be paid in the month following the month in which the Net Shipments occur. Each monthly payment of commissions will be accompanied by a Statement of Account. The Representative shall make all complaints or contests of any Statement of Account within sixty (60) days after the date of the Statement of Account. The Representative shall be bound by the contents of any statement of account for which no complaint or contest is made within such sixty-day period.

    f.    The Representative understands and agrees that **Safilo USA** is not obligated to pay any advances against commissions to be earned by the Representative.   If Safilo USA elects to make any advances to the Representative, the Representative agrees to repay any such outstanding advances at the termination of this Agreement to the extent that earned, but unpaid, commissions are less than the total of such advances.

**4.    Agreements and Understandings of Safilo USA**

    a.    Safilo USA shall fill orders for the Products that the Representative obtains, provided that, in its sole discretion,

        i.    Safilo USA considers the customer a suitable outlet for the Products, and

        ii.    The credit and other terms offered by the customer are satisfactory to Safilo USA.

    b.    Safilo USA shall make available to the Representative for purchase forms, business cards and display and promotional materials suitable for the Representative's use in promoting the Products and soliciting orders. However, the Representative shall have the right to use forms and suitable promotional materials other than those available for purchase from Safilo USA. Amounts due to Safilo by the Representative for the purchase of such forms and materials will be deducted from the Representative's monthly commissions.

    c.    Safilo will make available from time to time to the Representative and the Representative's employees, without cost to them, training and training materials relating to Products. The Parties understand that the Representative shall have the unfettered right to decide in its sole discretion whether the Representative and/or its employees shall attend training or use training materials offered by Safilo USA.

**5.    Term and Termination of Agreement**

    a.    This Agreement shall be in effect from the date of the last signature to this Agreement to and including the <u>last date of the same month</u>. Thereafter, this Agreement shall renew automatically commencing on the first day of each effective month for successive periods of one month, *except that*

        i.    Either Party may terminate this Agreement effective at the end of the last calendar day of any month by giving the other Party written notice of intent not to renew the Agreement not less than thirty (30) days before the end of the month when this Agreement is to terminate and the Representative's services hereunder are to cease. By way of example, if the Representative wishes to terminate this Agreement on July 31, written notice must be provided on or before July 1. Termination on November 30 requires receipt of notice by October 31.

        ii.    Safilo USA may terminate this Agreement for Cause at any time, with or without prior notice to the Representative. Termination of the Agreement for Cause shall be effective immediately. Safilo may elect to terminate this Agreement for Cause if

            (a)    The Representative breaches any of the obligations of or representations made in this Agreement;

            (b)    The Representative is convicted of or pleads guilty or *nolo contendre* to any crime involving theft, other form of dishonesty or bodily assault;

            (c)    The Representative is found after investigation to have engaged in unlawful harassment, including sexual harassment, while performing services hereunder; or

            (d)    The Representative becomes insolvent, becomes a debtor in a proceeding in bankruptcy or makes an assignment for the benefit of creditors.

      iii.    Safilo USA also may terminate this Agreement immediately and without giving the Representative prior written notice upon
          (a)    The death of the Representative, or
          (b)    The incapacity of the Representative (or its responsible employee) such that the Representative is unable, for a period of 30 days, to fulfill, or arrange to have fulfilled on the Representative's behalf, the Representative's essential duties and responsibilities under this Agreement to the satisfaction of Safilo USA.

b.    Upon the effective date of any termination of this Agreement, the Representative shall immediately cease soliciting orders for the Products and will return to Safilo USA within ten (10) days thereof all materials relating to the business of Safilo USA, including samples, sample cases, customer cards, computer printouts, customer lists, manuals, promotional items, directories, business plans and similar materials, whether in tangible form or in an electronic or digital format.

c.    If either Party gives notice to the other of intent not to renew this Agreement under subparagraph A(1) of this paragraph, Safilo USA shall, immediately upon giving or receiving such notice, have the right to appoint one or more additional sales representatives to solicit and procure orders for Products in the Territory.

d.    Safilo USA shall not be obligated to pay commissions on Net Shipments of Products that occur after the date that any notice of intent not to renew this Agreement or notice of termination of this Agreement is received by the other Party unless the Representative fully complies with all applicable terms of this Agreement.

e.    The Representative shall not under any circumstances be entitled to a commission on any shipments of Products made in any month after the termination of this Agreement has become effective.

f.    <u>Final Month Commissions</u>. Notwithstanding the terms of paragraph 3 above ("Commissions") and subject to paragraph 5(d), with respect to any month in which the termination of this Agreement becomes effective, Safilo USA will pay a commission to the Representative only as provided in this subparagraph 5(f):

      i.    The month in which the termination of this Agreement becomes effective shall be referred to herein as the "Final Month". The amount determined by multiplying all commissionable Net Shipments of Products to customers (other than House Accounts) located in the Territory during the Final Month by the then effective commission rate shall be referred to herein as Final Month Commissions.

      ii.    With respect to the Final Month, the Representative shall be paid an apportioned share of the Final Month Commissions determined by multiplying the Final Month Commissions by a fraction, the numerator of which shall be the number of days in the Final Month preceding (but not including) the effective date of termination and the denominator of which shall be the total number of days in the Final Month.

    iii.  Commissions payable under this subparagraph 5(f) will be paid to the Representative by Safilo USA within ninety (90) days after the effective date of the termination of this Agreement. Payment of commissions hereunder will be accompanied by a Final Statement of Account. The Representative shall make any and all complaints or contests to the Final Statement of Account within sixty (60) days after the date on which the Final Statement of Account was mailed. The Representative agrees that any and all complaints or contests of the Final Statement of Account shall be deemed waived if the Representative has made no complaint or contest within the sixty-day period, and that the Representative shall be bound by the contents of the Final Statement of Account in that case.

g.    The Representative understands that the termination of this Agreement shall in no case entitle the Representative to unemployment compensation or disability benefits and therefore agrees not to apply for such benefits upon termination of this Agreement.

**6.    Confidential Information**

a.    All information and material of Safilo USA that has not been made generally available to the public shall be deemed to be Confidential Information under this Agreement, including but not limited to information or material that was or is

      i.    Generated or collected by, or used in the operations of, Safilo USA and that relates to the actual and/or anticipated business, development or research of Safilo USA;

      ii.    Suggested by or resulting from any services performed by the Representative, or any task performed by the Representative in the course of performing services under this Agreement; or

      iii.    Received from customers or vendors – including potential customers or vendors with which the Representative is in contact in the course of performing services under this Agreement.

b.    The Representative agrees that all Confidential Information, including without limitation, data and information about Safilo USA's business, plans, forecasts, customers, advertisers, marketing, finances, equipment, technical specifications or data, processes, policies and methods of operation disclosed to, acquired by, or developed by the Representative during the performance of services under this Agreement is and shall remain the exclusive property of Safilo USA, and the Representative shall maintain the confidentiality of such information during the term of this Agreement and thereafter. The Representative agrees that such Confidential Information shall be used by the Representative solely for the purpose of, and as necessary to, performing services under this Agreement and not for the benefit of the Representative or any other person or entity. Likewise, the Representative shall not disclose any Confidential Information to any employee or agent of the Representative except as reasonably necessary to perform the obligations of this Agreement on the Representative's behalf, and shall ensure that all such agents and employees shall neither disclose nor use such Confidential Information to any person or entity or for any purpose other than those to or for which the Representative may use or disclose such Confidential Information.

c.    <u>Security Obligations</u>. Compliance with the Representative's obligations under this Paragraph VI shall require the Representative to implement reasonable measures to safeguard the security of the Confidential Information that the Representative necessarily is provided, or otherwise acquires or develops in order to perform services under this Agreement. Confidential Information provided or maintained in hard copy format shall be kept under lock and key, shall not be copied unless absolutely necessary to the Representative's performance and shall be disposed of by shredding or another form of secure document

destruction. Confidential Information in electronic or digital format, including e-mails, shall be maintained in a manner requiring an appropriate password to gain access, and shall also be maintained behind and protected by an effective firewall and anti-virus protection, at a minimum.

**7.    Conflict of Interest Prohibited**

While this Agreement is in effect, the Representative shall not perform services in any capacity for (a) any manufacturer, distributor or sales organization that sells eyewear or eyeglass frames to retailers, which, in addition to commercial optical stores, also shall include opticians, optometrists and ophthalmologists, or (b) any supplier, or customer of a supplier to Safilo USA, unless the Representative has received the prior written consent of Safilo USA.

**8.    Separate Covenants**

The representative understands and agrees that the covenants in paragraphs 6 and 7 of this Agreement, above, are a series of separate covenants – one for each state, including the District of Columbia, in which the Representative performs or shall perform services for Safilo USA. If in any judicial proceeding a court should hold unenforceable any of the separate covenants included in paragraphs 6 and 7 of this Agreement, then the unenforceable covenants shall be deemed limited as made necessary by the order of the court or eliminated from this Agreement for the purposes of that proceeding to the extent necessary to permit the remaining separate covenants of this Agreement to be enforced in that proceeding and to permit any covenant(s) held unenforceable to be enforced as limited.

**9.    Independence of Representative**

It is the mutual intention of Safilo USA and the Representative to establish, and this Agreement establishes between them, an independent contractor relationship, and all the terms of this Agreement shall be interpreted in a manner consistent with that mutual intention of the Parties. The Representative agrees to furnish personal services described in this Agreement as an independent contractor and will employ the Representative's own means and methods, using the Representative's sales expertise, knowledge and techniques for which Safilo USA retained Representative's services. Neither Party intends by this Agreement to create an employment or agency relationship. The Agreement does not authorize the Representative to perform any services that would cause the Representative to be considered an employee, or a non-employee agent, of Safilo USA, for purposes of taxation, liability, employer assessments and obligations, or for any other purposes. Accordingly, Safilo USA shall not make contributions under the Federal Insurance Contribution Act ("FICA"), the Federal Unemployment Tax Act ("FUTA"), Medicare, or any similar state or local laws, nor will it withhold any amounts from the Representative's compensation for income taxes. The Representative shall be fully responsible for payment of all self-employment taxes, premiums for Workers' Compensation insurance and all federal, state and local income taxes, as well as any and all state and local fees and licenses related to the Representative's business and shall indemnify Safilo USA against any losses it may suffer, including penalties, due to the Representative's failure to pay or pre-pay any taxes, premiums, fees, licenses or other similar payment required of the Representative. The Representative is not authorized to speak for or bind Safilo USA by the Representative's own statements or actions. The Representative shall not hold itself/himself/herself out to bind Safilo USA contractually or to act on behalf of Safilo USA in any capacity. The Representative acknowledges and agrees that the Representative shall not be eligible for or receive any of the benefits that Safilo USA provides to its employees.

**10.    No Waiver of Breach**

No waiver of any breach or of any term of this Agreement shall be construed to be , or shall be, a waiver of any other breach or term or provision of this Agreement. Should Safilo USA fail on any occasion to compel strict compliance with any term of this Agreement, that failure shall not be considered a waiver of any of Safilo USA's rights under this Agreement nor shall the Representative contend that it deprives Safilo USA of any right that Safilo USA may later seek to assert hereunder. No waiver of any right under this Agreement by either Party shall be binding unless in writing and signed by the Party waiving the right.

**11.    Representative's Work Product Owned by Safilo USA**

All information developed by the Representative in the course of performing under this Agreement is and shall be the exclusive property of Safilo USA. Upon termination of this Agreement, the Representative shall dispose of all work product in the Representative's possession in the manner directed by Safilo USA and shall not retain any work product belonging to Safilo USA after the termination of this Agreement.

**12.    Compliance with Law**

The Representative shall comply with any and all federal, state and local laws and regulations that apply to the Representative's business activities, including but not limited to those that pertain to health, safety, workers' compensation, security, licensure, business registration, personal conduct and taxation, whether presently effective or which may become effective during the term of this Agreement. The Representative shall hold Safilo USA harmless against any losses it may suffer, including penalties, due to the Representative's failure to comply with any federal, state or local law or regulation that applies to the Representative's business activities.

**13.    Governing Law; Construction**

This Agreement shall be deemed to have been executed and delivered within the State of New York, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of New York without regard to principles of conflict of laws. Further, this Agreement shall neither be construed in favor of or against either Party, but instead shall be construed according to the plain meaning of its terms and in accordance with the stated intent of the Parties at paragraph IX hereof and in the preamble hereto.

**14.    Dispute Resolution**

The Parties to this Agreement recognize that compliance with its terms and the nature of their relationship may give rise to the need to resolve disputes between the Parties. Both Safilo USA and the Representative wish to avoid the time, expense and disruption that can result from lawsuits, but they wish to have a method of resolving disputes that is mutually acceptable. Therefore, the Parties agree that if they are unable to reach agreement on any dispute through negotiation, the dissatisfied Party must submit the dispute, within six (6) months of the disputed matter first arising, to arbitration under this paragraph14, in the following manner:

a.    <u>Arbitration</u>. All disputes, controversies and claims of any kind arising between the Parties, including but not limited to claims arising out of or relating to this Agreement, the rights and obligations of the Parties, or other claims or causes of action relating to the performance of either Party shall be settled by arbitration administered by the American Arbitration Association ("AAA") at its office in New York City, Atlanta, Dallas, Denver or Chicago whichever is closest in proximity to the Representative's office, in accordance with the Federal Arbitration Act and the Commercial Rules of the AAA unless the parties otherwise agree in writing in accordance with paragraph 14(b) of this Agreement.

i.    This paragraph 14 shall survive expiration, non-renewal or termination of this Agreement for any reason.

ii.    The arbitration filing fee shall be borne by the initiating Party. Safilo USA shall pay the first $2,500 of the combined total of the arbitrator's compensation and any administrative costs imposed by the AAA or the arbitrator. The arbitrator's compensation and administrative costs in excess of $2,500 shall be borne equally by both Parties. Each Party shall bear his or its own legal fees and costs, other than administrative costs.

iii.    Both Parties shall have the right to seek a court order granting injunctive relief necessary to preserve the right to arbitrate a dispute.

iv.    The arbitrator shall have the power to make an award, including injunctive relief, to the same extent as a court, and any relief ordered shall be enforceable by court having jurisdiction under paragraph 14(c) of this Agreement.

v.    No arbitration or action under this Agreement shall include, by consolidation, joinder, or any other means, any claims by any person or entity, including without limitation another Independent Sales Representative, making claims through or on behalf of the Representative. The Representative shall not seek to arbitrate or relitigate as a representative of, or otherwise on behalf of, any other person or entity, any dispute, controversy, or claim of any kind arising out of or relating to this Agreement, or the rights and obligations of the parties hereto, or any other claims or causes of action relating to the performance of either Party to this Agreement. For the avoidance of doubt, the arbitrator shall not have the authority under this Agreement to hear and resolve any class actions or other forms of representative actions.

vi.    Except for direct negotiation between the Parties, binding arbitration, shall be the exclusive means for resolving any and all claims relating to this Agreement to the fullest extent permitted by law.

b.    <u>Alternative Procedures</u>. The Parties understand that in specific circumstances where the value of a claim is outweighed by the cost of arbitration, some flexibility in the foregoing dispute resolution procedures will be prudent and appropriate. Accordingly, if both parties agree in writing, they may modify the arbitration procedures in any of the following respects:

i.    Other Dispute Resolution Rules and Organizations. Either Party may propose to use a dispute resolution organization other than the AAA, or to use an arbitrator affiliated with a different organization, if that organization has procedural rules that are comparable in scope and formality to the AAA Commercial Rules. A Party may propose to use a private arbitrator if that arbitrator would apply the Commercial Rules of the AAA.

ii.    Cost Minimization. If a dispute is of such small size that the amount in controversy would not exceed the aggregate cost of the filing fees plus the fees anticipated for the time of an arbitrator, the Parties may seek to resolve the dispute using a local dispute resolution office which may provide its services at no or nominal cost.

c.    <u>Jurisdiction and Venue</u>. Any arbitration or other legal action commenced under or in connection with this Agreement shall be brought, and venue shall be proper only (i) in the AAA office in New York, Atlanta, Dallas, Denver or Chicago closest to the location of the Representative's office, or (ii) in the state or federal courts located in New York, New York. The Parties waive all questions of personal jurisdiction or venue for the purpose of carrying out the provisions of this section. This provision contemplates that the Parties may proceed in court where, and only where, the arbitrator does not have jurisdiction, a claim cannot be arbitrated as a matter of law, or where an action is commenced to enforce or vacate an arbitral award, and does not affect the applicability of paragraph 14, which requires the parties to submit all claims to binding arbitration. This jurisdiction and venue provision further applies where a party seeks a temporary restraining order or a preliminary injunction ancillary to arbitration proceedings as described in this paragraph 14 of this Agreement.

d.    <u>Saving Clause</u>. If any provision of this paragraph 14 would violate applicable state or federal law, then the Parties agree that such provision shall be shall be modified to the minimum extent necessary to make the terms hereof lawful, or if modification is not possible, then the provision of this paragraph 14 shall be excluded from the terms of this Agreement.

e.    <u>Waiver of Punitive Damages</u>. THE REPRESENTATIVE HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT OR CLAIM FOR ANY PUNITIVE, EXEMPLARY, CONSEQUENTIAL OR SPECULATIVE DAMAGES INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS, AND AGREES THAT, IN THE EVENT OF A DISPUTE, THE REPRESENTATIVE SHALL BE LIMITED TO THE ACTUAL DAMAGES SUSTAINED, EXCEPT AS OTHERWISE PROVIDED HEREIN.

**15.    Assignment**

The Parties agree that Safilo USA may assign its benefits and obligations under this Agreement to any successor to its business with or without prior notice to the Representative. However, the Representative may not assign this Agreement or any part of it without the prior written consent of Safilo USA, *except that* the Representative may assign this Agreement to a limited liability corporation or other form of corporate entity which is owned and controlled by the Representative, *provided that* the corporation agrees in writing to assume the obligations of this Agreement and be bound by its terms. Nothing herein shall be construed as limiting the Representative's right to assign duties hereunder to employees of the Representative, subject to the Representative's supervision and control.

**16.    Merger/Modifications**

This Agreement constitutes the entire understanding of the parties on the subjects covered herein and supersedes and replaces any prior understanding, contract or agreement, whether oral or written, concerning the subjects of this Agreement. This Agreement can be changed or modified only in a writing signed by both Parties.

**17.    Notices**

All notices, demands and requests required or permitted to be given under this Agreement shall be (i) in writing, (ii) delivered by personal delivery or sent by commercial delivery service or courier, or by registered or certified mail, return receipt requested, (iii) deemed to have been given on the date of personal delivery or the date of delivery recorded in the records of the commercial delivery service or courier or on the return receipt, and (iv) addressed as follows:

*If to Safilo USA:*

        Safilo USA, Inc.
        801 Jefferson Road
        Parsippany, New Jersey 07054-3753
        ATTN: Vice President, Safilo USA Sales Division

*If to the Representative:*

Valerie Almeida

███████████████

Valencia, CA 91354

18.     **Counterparts.**  This Agreement may be executed in two counterparts, each of which shall be deemed to be an original, but both of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the Parties hereto have executed this Independent Representative Agreement on the Date(s) set forth:

**SAFILO USA, INC.**

By: _____

_____
Date

**INDEPENDENT SALES REPRESENTATIVE**

By: _____

1- 15· 13
_____
Date

# EXHIBIT B



October 5, 2017

**<u>Via Certified U.S. Mail</u>**

California Labor & Workforce
Development Agency
Attn: PAGA Administrator
455 Golden Gate Avenue, 9th Floor
San Francisco, CA 94102
(Via Online Submission)

Safilo USA, Inc.
C/O Corporation Service Company
dba in California as CSC – Lawyers Incorporating Service
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

Safilo USA, Inc.
Attn: Legal Affairs Department
801 Jefferson Road
Parsippany, NJ 07054
Telephone: (800) 850-3919

      Re:    <u>PAGA Notice Pursuant to California Labor Code § 2699:  Valerie Almeida v.
               Employer (Safilo USA, Inc.)</u>

Dear Sir and Madam:

      Please be advised that Valerie Almeida ("Plaintiff") has retained Hardin & Lott, APC to represent her and other aggrieved employees for wage and hour claims against her former employer, Safilo USA, Inc. and/or responsible entities or affiliates ("Employer" or "Safilo").  This notice is being provided via certified mail to the Employer at their principal place of business and agent for service of process (if any), and is being filed with the California Labor and Workforce Development Agency ("LWDA") via the LWDA's electronic filing system under Section 2699.3(b) of the Labor Code.

      Plaintiff requests that the LWDA regard this Notice as written notice of her intent to seek civil penalties against Employer.  The specific provisions of the California Labor Code that Employer has violated requiring this notice include, but are not limited to California Labor Code sections 98.6, 201-203, 204, 206, 206.5, 210, 216, 221-223, 226, 226.3, 226.6, 226.7, 227.3, 256,

351, 432.5, 510, 512, 558, 1102.5, 1174, 1182.12, 1194, 1197, 1197.1, 2751, 2802, 2810.5 and all applicable Wage Orders.

## The Employer

Employer is a New Jersey company doing business in California, including hiring California residents as employees within the State of California.  Employer and its managing agents own and operate an international business selling glasses and related eyewear to retailers and consumers. Plaintiff is informed and believes that Employer generally employs more than 50 employees working within California. Plaintiff is informed and believes that Employer and any relevant affiliates constitute "joint employers" for all relevant purposes under California law.

Employer has violated or caused to be violated several Labor Code provisions and is therefore liable for civil penalties under California Labor Code §§ 2698-2699.5, *et seq*.  Plaintiff respectfully requests that your agency investigate the claims alleged against it herein.  This letter will serve as notice of these allegations pursuant to the Private Attorney Generals Act of 2004 ("PAGA").  Cal. Lab. Code § 2699.3.

## Plaintiff and Aggrieved Employees

At all relevant times, Plaintiff was a Sales Representative of Employer who was misclassified as an independent contractor but should have been deemed an hourly employee. Employer uses an array of similarly situated employees (i.e., Sales Representatives) to carry out the same or similar functions as Plaintiff (collectively "Aggrieved Employees").

According to the State of California, Department of Industrial Relations, when a worker is misclassified as an independent contractor, he or she is not subject to California minimum wage and overtime protection laws. Additionally, the worker has no workers' compensation coverage if injured on the job, no right to family leave, no unemployment insurance, no legal right to organize or join a union, and no protection against employer retaliation. The misclassification of workers as independent contractors creates an unfair playing field for responsible employers who honor their lawful obligations to their employees. The misclassification of workers results in a loss of payroll tax revenue to the State, estimated at $7 billion per year, and increased reliance on the public safety net by workers who are denied access to work-based protections.

Going back many years, Employer has blatantly misclassified Ms. Almeida and many other Sales Representatives as "independent contractors" when they are plainly employees under California law.  Under California law, it is unlawful for an employer to: (1) willfully misclassify an individual as an independent contractor, see Cal. Lab. Code § 226.8(a)(1); and (ii) charge an individual who has been willfully misclassified as an independent contractor a fee, or make any deductions from compensation, for any purpose, including for goods, materials, space rental,

# HL HARDIN & LOTT
## A PROFESSIONAL LAW CORPORATION

services, or the like. See Cal. Lab. Code § 226.8(a)(2). Employer systematically committed both of these serious types of violations for nearly 20 years, with Plaintiff and many of her former co-workers. In so misclassifying its employees, Employer has effectively foisted upon each employee tens of thousands of dollars' worth of charges annually that should have been borne by Employer.

Employer subjected Plaintiff and Aggrieved Employees to various additional unlawful wage and hour practices, including but not limited to, as stated herein: (1) misclassifying Plaintiff and Aggrieved Employees as independent contractors; (2) failing to pay overtime pay; (3) failing to pay minimum wages; (4) failing to provide uninterrupted off-duty meal periods and/or required penalties; (5) failing to provide uninterrupted off-duty rest periods and/or required penalties; (6) failing to maintain adequate records; (7) failing to furnish accurate wage statements; (8) failing to timely pay all wages due upon termination; and (9) failing to pay or reimburse work-related expenses.

At all relevant times, Plaintiff was an aggrieved employee, as defined in Labor Code section 2699(c) as: "any person who was employed by the alleged violator and against whom one or more violations was committed." Plaintiff seeks recovery for the Labor Code violations set forth herein on behalf of herself and other current and former employees, including but not limited to all similarly situated employees in the State of California within one year of the filing of this Notice and who were subject to the same or similar Labor Code and Wage Order violations as Plaintiff.

## **Labor Code Violations**

### **Misclassification**

Section 226.8 of the Labor Code imposes significant penalties on employers who willfully misclassify employees as independent contractors, and also penalizes employers who charge fees or make deductions from compensation to an individual who has been willfully misclassified as an independent contractor. The common law test to determine whether a worker is an employee or independent contractor is imprecise and requires an analysis of several factors of the employer-worker relationship. These factors must be weighed against each other and considered in light of the total circumstances. They include:
1) Who has the right to control the worker's manner and means of performing his or her duties – an independent contractor has more control over the day-to-day details of his or her job than an employee;
2) The skill required in the worker's job – independent contractors often perform highly skilled jobs;
3) Whether the worker is engaged in a distinct business or occupation – if the worker is engaged in a distinct business or occupation, it is more likely the worker is an independent contractor;

4) Whether the work is done under supervision – the more an employer is directly supervising the worker, the more likely he or she is an employee;

5) Whether the worker can be discharged at will or for cause – allowing discharge at will often weighs in favor of an employer-employee relationship;

6) Who supplies the tools, instrumentalities and place of work – if the worker supplies these, he or she is more likely an independent contractor;

7) The length of time the services are to be performed – discrete jobs are generally performed by independent contractors;

8) The method of payment, whether by time or by the job – payment by time generally signals an employee relationship;

9) Whether the work is part of the regular business of the principal – if it is, the worker is more likely an employee;

10) Whether the parties subjectively believe they are creating an employer-employee relationship. *See S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal.3d 341, 350-51 (1989).

Under the salient "economic realities" test (and other similar tests) that Courts use to distinguish employees from bona fide contractors, this is not even a close call – the Sales Representatives were employees. On the threshold question of the "right to control," Safilo had the right to control "the manner and means" of their work and regularly ***and consistently exercised that right*** in many ways. *See* 22 Cal. Code Regs. § 4304-1 ("[T]o determine whether one performs services for another as an employee, the most important factor is the right of the principal to control the manner and means of accomplishing a desired result. If the principal has the right to control the manner and means of accomplishing the desired result, whether or not that right is exercised, an employer-employee relationship exists."); *compare* Cal. Lab. Code § 3353 (defined "independent contractor" as person who renders service for a principal who has no right to "control . . . the means by which" work is accomplished). Moreover, "[w]here there is independent evidence that the principal has the right to control the manner and means of performing the service in question it is not necessary to consider the [below] enumerated factors."

Here, the analysis need not even proceed to the "control" factors below because there is compelling evidence that Safilo legally and actually controls many aspects of the Sales Representative position, including requiring that they ***work exclusively*** for Safilo and no other companies,[1] training them on how to sell their products via third party and in-house training presentations (e.g., "ride-alongs"), providing them administrative support to carry out their jobs

---

[1] The December 4, 1998 agreement that Safilo required Plaintiff and many other Sales Representatives to sign states, in pertinent part:

> In recognition of the above, I will only sell Safilo model frames and sunglasses . . . while my Sales Agreement is in force. If I terminate the Agreement before the end of 24 months, I will not sell any other eyewear in my territory for a period of six months from the date of termination. . . .

such as booking and paying for travel, providing them with the "instrumentalities" needed to perform the job – i.e., the eyewear to sell, and setting and enforcing sales quotas, goals, and other performance standards.    Indeed, that fact that Safilo required Plaintiff and other Sales Representatives to sign an agreement in 1998 that precludes them from selling competing eyewear and even prevents them from competing after they are terminated eviscerates any claim that Safilo has that these workers are somehow "independent" and running their own separate business.[2] Accordingly, the sham language in the written "independent contractor" agreements purporting to mischaracterize the reality of the parties' relationship does nothing to protect Safilo from legal liability here; rather, it actually underscores Safilo's intent and culpability in trying to maintain and disguise its illegal business structure.

Proceeding to the "control" factors, nearly all of them point definitively to Plaintiff and other Sales Representatives being deemed employees rather than "independent contractors" of Safilo.  22 Cal. Code Regs. § 4304-1(b) ("The factors enumerated in [4304-1](a) above are indicia of the right to control"); *see also* Cal. Lab Code § 2750.5(c) ("A bona fide independent contractor status is further evidenced by the presence of cumulative factors such as substantial investment other than personal services in the business, holding out to be in business for oneself, bargaining for a contract to complete a specific project for compensation by project rather than by time, control over the time and place the work is performed, supplying the tools or instrumentalities used in the work other than tools and instrumentalities normally and customarily provided by employees, hiring employees, performing work that is not ordinarily in the course of the principals work, performing work that requires a particular skill, holding a license pursuant to the Business and Professions Code, the intent by the parties that the work relationship is of an independent contractor status, or that the relationship is not severable or terminable at will by the principal but gives rise to an action for breach of contract."); *Ayala v. Antelope Valley Newspapers, Inc*., 59 Cal.4th 522, 528 (2014) (provides list of key factors); *S.G. Borello & Sons, Inc. v. Dept. of Industrial Relations*, 48 Cal.3d 341 (1989) (same).

Nearly all of the key factors strongly indicate that Sales Representatives are employees, including:

- **Whether person performing services is engaged in separate occupation or business**:[3] No

---

[3] 22 Cal. Code Regs. § 4304-(a)(1) ("Whether or not the one performing the services is engaged in a separately established business or occupation"); *see also* Cal. Lab Code § 2750.5(c).  "If the person performing services for the principal is not in a separately established occupation or business it will be evidence that the services are performed in employment.  If the individual performing the services does not have an independently established occupation or business, and the services are a regular part of the business of the principal, it will be presumed that the services are performed in employment."  22 Cal. Code Regs. § 4304-(b)(7)

# HL HARDIN & LOTT

## A PROFESSIONAL LAW CORPORATION

- **Whether the work is part of the regular business of the principal**:[4] Yes.
- **Whether the principal or person providing the services supplies the instrumentalities, tools, and the place of work for the person the work:**[5] Safilo supplies the main instrumentalities – eyewear.
- **Whether the type of work is usually done in locality without supervision:**[6] No.
- **The skill required to perform the work**:[7] The Sales Representative position requires little if any prior experience, training, or education.
- **Whether the length of time for the work is an isolated event or continuous in nature:**[8] The work was continuous – Plaintiff worked in the same position at Safilo nearly 20 years and most of her former colleagues also worked in the same position for many, many years.
- **Whether the workers are paid by time, piece rate, or by the job:**[9] Plaintiff was paid by commission on regular intervals and generally similar amounts.

---

[4] 22 Cal. Code Regs. § 4304-(a)(7) ("Whether or not the work is part of the regular business of the principal, or whether the work is not within the regular business of the principal"); *see also* Cal. Lab Code § 2750.5(c) (whether the worker is "performing work that is not ordinarily in the course of the principal's work"). "If the principal is in business and the services performed are a regular part of the business of the principal, it is evidence that the services are performed in employment. It is presumed that if the principal is in business, he has the right to control the manner and means by which services in that business are performed as an incident to the principal's right to protect his business interests. There must be a strong showing that the principal has abandoned that right to overcome the evidence of employment under those circumstances." 22 Cal. Code Regs. § 4304-(b)(6)

[5] 22 Cal. Code Regs. § 4304-(a)(4) ("Whether the principal or the person providing the services supplies the instrumentalities, tools, and the place of work for the person doing the work."); *see also* Cal. Lab Code § 2750.5(c). If the instrumentalities are "of substantial value and supplied by the principal if would indicate the principal had the right to control the manner and means of their use and that the worker would follow a principal's direction in the use of such valuable instrumentalities if the principal chose to give such directions. Similarly, if the facilities are of an intangible nature or unavailable except through the principal, such as a trade name, office facilities, advertising, merchandise, inventory, or communications, the worker would also be presumed to use such facilities in a way specified by the principal if the principal chose to specify so that the worker can insure their continued use and availability." 22 Cal. Code Regs. § 4304-(b)(1)

[6] 22 Cal. Code Regs. § 4304-(a)(2) ("The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of a principal without supervision").

[7] 22 Cal. Code Regs. § 4304-(a)(3) ("The skill required in performing the services and accomplishing the desired result."). "Unskilled labor is usually supervised and persons performing services, which require little or no skill or experience are customarily regarded as employees. Even when skill is required, such as an artisan, and the services are in incident of the business of the principal, the principal would usually be considered to have the right to control the manner and means of performing the service incident to its business." 22 Cal. Code Regs. § 4304-(b)(2)

[8] 22 Cal. Code Regs. § 4304-(a)(5) ("The length of time for which the services are performed to determine whether the performance is an isolated event or continuous in nature."). "If the time in which the service is performed is short, the worker is less apt to subject himself to control as to details of performing the service. . . . If the services are performed on a continuing basis it would be evidence of employment, especially if the services are a regular part of the principal's business. The time of performing services and the method of payment may result in strong evidence of employment if the performance and payment occur during regular intervals at regular times and payment is in regular amounts." 22 Cal. Code Regs. § 4304-(b)(3)

[9] 22 Cal. Code Regs. § 4304-(a)(6) ("The method of payment, whether by the time, a piece rate, or by the job").

# HL   HARDIN & LOTT
## A PROFESSIONAL LAW CORPORATION

- **The worker's opportunity for profit or loss depending on the worker's managerial skill**:[10] Plaintiff had no risk of any loss and her commissions did not vary based on her "managerial skill," but merely the amount of her sales skill and effort.
- **The workers investment in equipment or materials required for the task or the employment of helpers:** [11] Sales Representatives hired no helpers and the only "investment" in equipment was because Safilo improperly required them to "purchase" the merchandise they were selling for it as part of its regular business.

Indeed, the only factor that arguably favors Safilo in this analysis is "whether the parties believe they are creating the relationship of employer and employee," but that is only because Safilo consistently required employees to sign documents asserting (falsely under California law) they were "independent contractors." 22 Cal. Code Regs. § 4304-(a)(8). However, it is well settled that "[t]he terminology used in an agreement between a principal and a worker is not conclusive of the relationship." 22 Cal. Code Regs. § 4304-(b)(5).

Thus, Plaintiff is confident that she can show, for herself and a class of similarly-situated coworkers, that Safilo intentionally and systematically misclassified its Sales Representatives as independent contractors.

## Unlawful Failure to Pay Overtime

Employer misclassifies Plaintiff and certain Aggrieved Employees as independent contractors and therefore fails to compensate them for the many hours of overtime they work and for which they are entitled to be paid. Employer has failed to maintain a policy that compensates Plaintiff and Aggrieved Employees for hours worked, including overtime. Among other things, Plaintiff and Aggrieved Employees are required to perform an array of "off-the-clock" work, including performing work before or after scheduled shifts and working through or during meal periods and rest periods. As a result, Employer does not pay Plaintiff or Aggrieved Employees for the overtime worked on a daily basis, weekly basis, and/or due to untimely, interrupted, or non-duty free meal periods or rest periods.

As a result of violations of the California Labor Code sections 510, 1194, and applicable Industrial Welfare Commission Wage Orders ("wage orders") for failure to pay overtime, Employer is liable for civil penalties pursuant to California Labor Code sections 558 and 2698 *et seq.*

---

[10] *S.G. Borello*, 48 Cal.3d 341 (1989).
[11] *S.G. Borello*, 48 Cal.3d 341 (1989).

### Unlawful Failure to Provide Unpaid Balance of Full Amount of Overtime Compensation

As described above, Employer has required Plaintiff and Aggrieved Employees to work hours qualifying them for significant overtime compensation, but has not paid these employees overtime compensation. As a result, Plaintiff and Aggrieved Employees have been denied "the unpaid balance of the full amount of this . . . overtime compensation" as required by California Labor Code section 1194, and Employer is liable for civil penalties pursuant to California Labor Code section 2698 *et seq*.

### Unlawful Failure to Pay Minimum Wage

Employer has failed to maintain a policy that compensates Plaintiff and Aggrieved Employees an amount equal to or greater than the minimum wage for all hours worked, as required by California Labor Code sections 1182.12, 1194, 1197, 1197.1, and applicable wage orders. All hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation. Among other things, Plaintiff and Aggrieved Employees are required to perform an array of "off-the-clock" work, including performing work before or after scheduled shifts and working through or during meal periods and rest periods. As a result, Employer does not pay Plaintiff or Aggrieved Employees for the minimum wages worked on a daily basis, weekly basis, and/or due to untimely, interrupted, or non-duty free meal periods or rest periods.

As a result of violations of California Labor Code sections 1182.12, 1194, 1197, 1197.1, 1198 and applicable wage orders for failure to pay minimum wage, Employer is liable for civil penalties pursuant to California Labor Code sections 558, 1197.1, and 2698 *et seq*.

### Unlawful Failure to Provide Uninterrupted Off-Duty Meal Periods

California Labor Code section 512 and Work Order 5, section 12(A)-(C) require every California employer to provide all non-exempt employees a duty-free meal period of not less than 30 minutes, for a work period of more than five (5) hours, "except that if the total work period per day is not more than six (6) hours, the meal period may be waived by mutual consent of the employer and employee. An employer may not employ and employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours work is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived." Under subdivision (a) of Labor Code section 226.7, an employer shall not require an employee to work during meal periods mandated by state law. Subdivision (c) provides that "[i]f an employer fails to provide an employee a meal . . . period in compliance with an applicable statute, wage order, etc. . . . the employer shall pay the employee one (1) additional



hour of pay at the employee's regular rate of compensation for each workday that the meal . . . period is not provided."

Employer has, among other things, failed to: (1) maintain a policy that provides Plaintiff and Aggrieved Employees with off-duty meal periods as required by California law; (2) provide Plaintiff and Aggrieved Employees with a reasonable opportunity to take their meal periods at the appropriate times; and (3) failed to pay Plaintiff and Aggrieved Employees an additional hour of pay at their regular rate of pay for each missed or late meal period.  In addition, Employer has misclassified Plaintiff and Aggrieved Employees as independent contractors and thereby failed to provide them meal and rest periods in accordance with legal requirements.  Among other things, Plaintiff and Aggrieved Employees were regularly not provided required meal periods or required to take untimely, interrupted, or non-duty free meal periods without receiving an additional hour of pay at their regular rate of pay for each such meal period.

As a result of Employer's violations of California Labor Code sections 226.7, 226.7(b), 512, and 1198, Employer is liable for civil penalties pursuant to California Labor Code sections 558 and 2698 *et seq*.

### Unlawful Failure to Provide Uninterrupted Off-Duty Rest Periods

Labor Code section 226.7 and Work Order 5 section 12(A) require every California employer to authorize and permit all non-exempt employees to take rest periods at the rate of ten (10) minutes net rest time per four (4) hours, or a major fraction thereon.  Under subdivision (a), an employer shall not require an employee to work during rest periods mandated by state law.  Subdivision (c) provides that "[i]f an employer fails to provide an employee a rest period in compliance with an applicable statute, wage order, etc. . . the employer shall pay the employee one (1) additional hour of pay at the employee's regular rate of compensation for each workday that the rest . . . period is not provided."

Employer has, among other things, failed to: (1) maintain a policy that provides Plaintiff and Aggrieved Employees with off-duty rest periods as required by California law; (2) provide Plaintiff and Aggrieved Employees with a reasonable opportunity to take their rest periods at the appropriate times; and (3) failed to pay Plaintiff and Aggrieved Employees an additional hour of pay at their regular rate of pay for each missed or late rest period.  In addition, Employer has misclassified "managers" as independent contractors and thereby failed to provide them meal and rest periods in accordance with legal requirements.  Among other things, Plaintiff and Aggrieved Employees were regularly not provided required rest periods or required to take untimely, interrupted, or non-duty free rest periods without receiving an additional hour of pay at their regular rate of for each such rest period.

As a result of Employer's violations of California Labor Code sections 226.7, 226.7(b), and 512, Employer is liable for civil penalties pursuant to California Labor Code sections 558 and 2698 *et seq*.

## Unlawful Failure to Maintain Adequate Records

Labor Code section 1174 states, in pertinent part, that "[e]very person employee labor in this state shall . . . (c) Keep a record showing the names and addresses of all employees employed . . . [and] (d) Keep, at a central location in the state . . . or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages paid to . . . employees employed at the respective . . . establishments.  These records shall be kept . . . in a file for not less than three years. . . Likewise, Wage Order 5, section 7 requires that "(A) [e]very employer shall keep accurate information with respect to each employee including the following: (1) the full name, home address, occupation and social security number (2) Birth date . . . (3) Time records showing when the employee begins and ends each work period, meal periods, split shift intervals and total daily hours worked shall also be recorded . . . (5) Total hours worked in the payroll period and the applicable rates of pay.  This information shall be made readily available to the employee upon reasonable request . . . ."  In addition, Labor Code section 353 also requires employers to keep accurate records of all gratuities or tips they receive, directly or indirectly, which may not be collected by "managers" or owners under Labor Code section 351.  Labor Code section 1174.5 provides that "any person employing labor who willfully fails to maintain the records required under subdivision (c) of section 1174 or accurate or complete records required by subdivision (d) of section 1174 . . . shall be subject to a civil penalty of five hundred dollars ($500).  Subdivision (d) of section 1174.5 states that "[a]ny person, or officer or agent thereof, is guilty of a misdemeanor who fails to keep any of the records required by section 1174.

For the reasons and bases noted here, Employer has, among other things, willfully failed to adequate records regarding Plaintiff and Aggrieved Employees.

As a result of Employers' violations of California Labor Code sections 201-204, 206, 216, and 512, 1174, Employer is liable for civil penalties pursuant to California Labor Code sections 210 and 2698 *et seq*.

## Unlawful Failure to Furnish Accurate Wage Statements

Labor Code section 226 requires an employer to provide employees with accurate itemized wage statements showing (1) gross wages earned, (2) total hours worked by an non-exempt employee, (3) piece rates, if applicable, (4) all deductions, (5) net wages earned, (6) the inclusive dates of the period for which the employee is being paid, (7) the name of the employee and his or her social security number or identification number, (8) the name and address of the legal entity that is the employer, and (9) all hourly rates in effect and the corresponding number of hours

**HL  HARDIN & LOTT**
A PROFESSIONAL LAW CORPORATION

worked.  In addition, any payment made in cash must be accompanied by an itemized wage statement that meets the conditions set forth above.  Wage Order 5, section 7(B) requires an employer to provide the same information.

Labor Code 226.3 provides that "any employer who violates subdivision (a) of section 226 shall be subject to a civil penalty in the amount of two-hundred and fifty dollars ($250) per employee per violation in an initial citation, and one-thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records in subdivision (a) of section 226.  The penalties provided for in this section are in addition to any other penalty provided by law."

Employer has violated California Labor Code § 226(a) by willfully failing to furnish Plaintiff and Aggrieved Employees with itemized wage statements accurately stating, among other things, gross wages earned, total hours worked, deductions, net wages earned, and hourly rates and number of hours worked.  As a result of violations of California Labor Code section 226(a), Employers are liable for civil penalties pursuant to California Labor Code sections 226.3 and 2698 *et seq*.

### Unlawful Failure to Make Semimonthly Payments

Employer has violated California Labor Code section 204 by failing to make semimonthly payments of wages "twice during each calendar month, on days designated in advance by the employer as the regular paydays."  As discussed herein, Employer failed to pay Plaintiff and Aggrieved Employees any wages for many pay periods.

### Unlawful Failure to Timely Pay Wages Due Upon Termination

Labor Code section 201 provides "if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.  Labor Code section 202 provides "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his intention to quit, in which case the employee is entitled to his wages at the time of quitting."  Labor Code section 208 requires that all final wages be paid to an employee who is terminated at the place of discharge and to an employee who voluntarily resigns at the place where the employee has been working.

Employer has violated California Labor Code sections 201 and 202 by willfully failing to timely pay all compensation due and owing to Plaintiff and all former Aggrieved Employees at the time employment was terminated because of, as noted herein, said unpaid overtime wages, regular wages, minimum wages, reporting time pay, one hour penalties for missed, interrupted, or untimely meal periods and rest periods, and unreimbursed work-related expenses, among others.

# HL HARDIN & LOTT
## A PROFESSIONAL LAW CORPORATION

Employer willfully failed to pay Aggrieved Employees no longer employed by it all compensation due upon termination of employment as required under California Labor Code sections 201 and 202. Pursuant to sections 203 and 256 of the Labor Code, Plaintiff and similarly situated individuals are now entitled to recover up to thirty (30) days of wages due to Employer's willful failure to comply with the statutory requirements of sections 201 and 202 of the Labor Code. In addition, because Employer violated California Labor Code sections 201, 202, and 203, Employer is liable for civil penalties pursuant to California Labor Code section 2698 *et seq.*

### Unlawful Failure to Reimburse Work-Related Expenses

Labor Code section 2802 provides that "[a]n employer shall indemnify an employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." Subsection (c) of Labor Code section 2802 further provides that "[f]or purposes of this section, the terms necessary expenditures or losses" shall include all reasonable costs, including but not limited to, attorneys' fees incurred by the employee enforcing the rights granted by this section." *See also Cochran v. Schwan's Home Services, Inc.*, 228 Cal.App.4th 1137 (2014).

Among other things, Employer required Plaintiffs and Aggrieved Employees to spend thousands of dollars per year purchasing eyewear to sell for the company from the company, driving well-over 10,000 miles per year in their own vehicles on work-related sales calls for Employer, and other similar out-of-pocket expenses that were never reimbursed because Plaintiff's and Aggrieved Employees were improperly deemed "independent contractors" when they were actually employees of Employer.

### Unlawful Violation of California Labor Code § 1199

Under California Labor Code sections 1199(a) and (c) and 2699.5 *et seq.*, an employer who "requires or causes an employee to work for longer hours than those fixed" or "violates or refuses or neglects to comply with any provision of" the Labor Code regarding employees' wages, hours, and working conditions is subject to PAGA penalties. Employers have violated the Labor Code in various ways set forth herein.

### Unlawful Deductions from Pay Labor Code §§ 221-223

Employer made various deductions from the pay of Aggrieved Employees for various unlawful charges and expenses related to its unlawful independent contractor arrangements. Employers had no right to deduct, withhold or withdraw these amounts from the pay of Aggrieved Employees. These actions violated Labor Code sections 221-223, among other Labor Code provisions.



## Conclusion

     Employer has violated or caused to be violated a number of California wage and hour laws. Plaintiff requests that the agency investigate the above allegations and provide notice of the allegations pursuant to PAGA's provision. Alternatively, Plaintiff requests the agency inform them if it does not intend to investigate these violations so that they may include in their lawsuit the violations discussed this letter.

               Very truly yours,

               HARDIN & LOTT
               A Professional Corporation

               James B. Hardin

JBH/br